# EXHIBIT A

**From:** Craig, Bill
**To:**
**CC:** Frownfelter Jennifer
**Date:** Jun 11, 2019, 4:29 PM
**Subject:** [Non-DoD Source] RE: Pebble EIS Milestone Schedule (UNCLASSIFIED)
**Attachment(s):** 2

Shane,
The attached schedule contains the changes you requested as clarified during our call this morning. Tha

Bill Craig
D 1-907-261-6703
M 1-907-441-7207

-----Original Message-----
From: POA Special Projects [mailto:poaspecialprojects@usace.army.mil]
Sent: Monday, June 10, 2019 3:26 PM
To: Craig, Bill; Bella, Elizabeth
Cc: POA Special Projects
Subject: Pebble EIS Milestone Schedule (UNCLASSIFIED)

CLASSIFICATION: UNCLASSIFIED

Bill,
As discussed, when I was prepping for the review of the schedule after the 30 day public comment exten: dEIS, the milestones of concern are highlighted as authorized by my management. Summary of the Key considered by management was the additional 45 days for the review of pFEIS startin November 1, 2019 EIS was approved for release on March 31, 2020 with the final ROD signed on May 29, 2019. Please rev master schedule and send over so I can share it this week with PLP and the CAs.

VR

Shane McCoy
Program Manager
CLASSIFICATION: UNCLASSIFIED

**From:** Craig, Bill
**To:**
**Date:** May 30, 2019, 8:59 AM
**Subject:** [Non-DoD Source] Re: schedule (UNCLASSIFIED)

Thanks Shane - is the May 23 schedule approved and ready to share with PLP?

Sent from my iPhone

> On May 30, 2019, at 8:29 AM, POA Special Projects <poaspecialprojects@usace.army.mil> wrote:
>
> CLASSIFICATION: UNCLASSIFIED
>
> Bill,
> You are correct in that the ROD will be signed May 29.
>
> -----Original Message-----
> From: Craig, Bill [mailto:bill.m.craig@aecom.com]
> Sent: Wednesday, May 29, 2019 3:34 PM
> To: POA Special Projects <poaspecialprojects@usace.army.mil>; Hobbie, David S CIV USARMY CEPOA (US) <David.S.Hobbie@usace.army.mil>
> Cc: Bellion, Tara <tara.bellion@aecom.com>; Frownfelter, Jennifer <jennifer.frownfelter@aecom.com>
> Subject: [Non-DoD Source] RE: schedule (UNCLASSIFIED)
>
> Shane,
> I sent a revised schedule on May 23 incorporating the changes you recommended May 22. It shows the ROD signed on May 29 as you recommended. Please clarify if you want the ROD extended another two weeks into June and if the other changes I made are acceptable. Thanks, Bill
>
> Bill Craig
> D 1-907-261-6703
> M 1-907-441-7207
>
>
> -----Original Message-----
> From: POA Special Projects [mailto:poaspecialprojects@usace.army.mil]
> Sent: Wednesday, May 29, 2019 2:08 PM
> To: Hobbie, David S CIV USARMY CEPOA (US)
> Cc: POA Special Projects; Craig, Bill; Bellion, Tara
> Subject: schedule (UNCLASSIFIED)
>
> CLASSIFICATION: UNCLASSIFIED
>
> Dave,
> Per our conversation on 21 May, you concurred that the final date of the ROD will move by two weeks further out in time.
>
> Shane McCoy
> Program Manager
> CLASSIFICATION: UNCLASSIFIED
> CLASSIFICATION: UNCLASSIFIED



| ID | Task Name | Duration | Start | Finish |
|---|---|---|---|---|
| 0 | **Pebble EIS Milestone Schedule 052319** | **601 days** | **Mon 2/5/18** | **Tue 6/23/20** |
| 1 | **Project Start (NTP as Contract Negotiated)** | **1 day** | **Mon 2/5/18** | **Mon 2/5/18** |
| 2 | **Task 1 - Project Management** | **595 days** | **Mon 2/5/18** | **Mon 6/15/20** |
| 71 | **Task 2 - Scoping, Agency Coordination and Public Involvement** | **570 days** | **Tue 2/20/18** | **Fri 5/22/20** |
| 72 | **Website Development & Maintenance** | **566 days** | **Tue 2/20/18** | **Mon 5/18/20** |
| 101 | **Mailing List** | **483 days** | **Tue 2/20/18** | **Tue 1/21/20** |
| 128 | **Public Scoping** | **93 days** | **Tue 2/20/18** | **Fri 6/29/18** |
| 155 | **Cooperating Agency Scoping Meeting** | **1 day** | **Wed 6/6/18** | **Wed 6/6/18** |
| 157 | **Scoping Summary Report** | **109 days** | **Fri 3/30/18** | **Fri 8/31/18** |
| 171 | **USACE & Cooperating Agency Coordination Meetings (Monthly)** | **461 days** | **Tue 5/15/18** | **Mon 3/16/20** |
| 195 | **Draft EIS Public Meetings/Hearings** | **333 days** | **Tue 3/6/18** | **Mon 7/1/19** |
| 196 | Prepare Notice of Availability (NOA) for Draft EIS | 15 days | Wed 12/26/18 | Wed 1/16/19 |
| 197 | USACE Review and Publish NOA for DEIS | 30 days | Thu 1/17/19 | Fri 3/1/19 |
| 198 | NOA for DEIS Published | 1 day | Fri 3/1/19 | Fri 3/1/19 |
| 199 | *Draft EIS Public Review Period* | *122 edays* | *Fri 3/1/19* | *Mon 7/1/19* |
| 200 | **Newsletter #2 Announcing Release of DEIS** | **15 days** | **Fri 2/8/19** | **Fri 3/1/19** |
| 201 | Prepare Draft Newsletter #2 | 3 days | Fri 2/8/19 | Tue 2/12/19 |
| 202 | USACE Review Newsletter #2 | 2 days | Wed 2/13/19 | Thu 2/14/19 |
| 203 | Finalize and Publish Newsletter #2 | 10 days | Fri 2/15/19 | Fri 3/1/19 |
| 204 | **News Release #2 Release of DEIS** | **3 days** | **Fri 2/15/19** | **Wed 2/20/19** |
| 205 | Prepare Draft News Release #2 | 3 days | Fri 2/15/19 | Wed 2/20/19 |
| 206 | USACE Review News Release #2 | 1 day | Wed 2/20/19 | Wed 2/20/19 |
| 207 | Finalize and Publish News Release #2 | 1 day | Wed 2/20/19 | Wed 2/20/19 |
| 208 | **Hearing Preparations and Materials** | **45 days** | **Thu 1/17/19** | **Fri 3/22/19** |
| 209 | Arrange/Secure Hearing Facilities & Court Reporters | 15 days | Thu 1/17/19 | Thu 2/7/19 |
| 210 | Prepare Draft Hearing Materials | 25 days | Thu 1/17/19 | Fri 2/22/19 |
| 211 | USACE Review Hearing Materials | 10 days | Mon 2/25/19 | Fri 3/8/19 |
| 212 | Finalize and Produce Hearing Materials | 10 days | Mon 3/11/19 | Fri 3/22/19 |
| 213 | **News Release #3 Notice of Public Hearings** | **252 days** | **Tue 3/6/18** | **Wed 3/6/19** |
| 214 | Prepare Draft News Release #3 | 3 days | Mon 3/4/19 | Wed 3/6/19 |
| 215 | USACE Review News Release #3 | 0 days | Tue 3/6/18 | Tue 3/6/18 |
| 216 | Finalize and Publish News Release #3 | 22 days | Wed 3/7/18 | Thu 4/5/18 |
| 217 | Public Hearings (9) | 17 days | Mon 3/25/19 | Tue 4/16/19 |



| ID | Task Name | Duration | Start | Finish |
|---|---|---|---|---|
| 218 | **Final EIS** | **36 days** | **Fri 3/20/20** | **Fri 5/8/20** |
| 219 | Upload eNEPA Version FEIS | 2 days | Tue 3/31/20 | Wed 4/1/20 |
| 220 | *FEIS Review Period* | *30 edays* | *Wed 4/8/20* | *Fri 5/8/20* |
| 221 | **Newsletter #3 FEIS** | **15 days** | **Fri 3/20/20** | **Thu 4/9/20** |
| 222 | Prepare Draft Newsletter #3 | 5 days | Fri 3/20/20 | Thu 3/26/20 |
| 223 | USACE Review Newsletter #3 | 5 days | Fri 3/27/20 | Thu 4/2/20 |
| 224 | Finalize and Publish Newsletter #3 | 5 days | Fri 4/3/20 | Thu 4/9/20 |
| 225 | **News Release #4 Release of FEIS** | **15 days** | **Fri 3/20/20** | **Thu 4/9/20** |
| 226 | Prepare Draft News Release #4 | 5 days | Fri 3/20/20 | Thu 3/26/20 |
| 227 | USACE Review News Release #4 | 5 days | Fri 3/27/20 | Thu 4/2/20 |
| 228 | Finalize and Publish News Release #4 | 5 days | Fri 4/3/20 | Thu 4/9/20 |
| 229 | **Record of Decision** | **21 days** | **Fri 4/24/20** | **Fri 5/22/20** |
| 230 | **Newsletter #4 ROD** | **21 days** | **Fri 4/24/20** | **Fri 5/22/20** |
| 231 | Prepare Draft Newslettter #4 | 7 days | Fri 4/24/20 | Mon 5/4/20 |
| 232 | USACE Review Newsletter #4 | 7 days | Tue 5/5/20 | Wed 5/13/20 |
| 233 | Finalize and Publish Newsletter #4 | 6 days | Fri 5/15/20 | Fri 5/22/20 |
| 234 | **News Release #5 Release of ROD** | **21 days** | **Fri 4/24/20** | **Fri 5/22/20** |
| 235 | Prepare Draft News Release #5 | 7 days | Fri 4/24/20 | Mon 5/4/20 |
| 236 | USACE Review Draft News Release #5 | 7 days | Tue 5/5/20 | Wed 5/13/20 |
| 237 | Finalize and Publish News Release #5 | 6 days | Fri 5/15/20 | Fri 5/22/20 |
| 238 | **Task 3 - Draft EIS** | **338 days** | **Fri 2/16/18** | **Wed 6/19/19** |
| 327 | **Task 4 - Final EIS (FEIS)** | **319 days** | **Mon 2/25/19** | **Fri 5/29/20** |
| 328 | **Address DEIS Data Gaps** | **144 days** | **Mon 2/25/19** | **Tue 9/17/19** |
| 329 | Prepare and Submit RFIs for Data Gaps Identified in the DEIS | 5 days | Mon 2/25/19 | Fri 3/1/19 |
| 330 | Prepare and Submit RFIs to Address Substantive DEIS Comments (as needed) | 90 days | Wed 4/24/19 | Fri 8/30/19 |
| 331 | Receive Data for Data Gaps and all RFI Responses (no later than) | 12 days | Fri 8/30/19 | Tue 9/17/19 |
| 332 | PLP Provides Data for Project Refinements | 1 day | Fri 8/30/19 | Fri 8/30/19 |
| 333 | **USACE Direction for Ch 2, Ch 3 Revisions** | 20 days | Fri 4/19/19 | Thu 5/16/19 |
| 334 | **Comment Analysis and Response** | **142 days** | **Mon 2/25/19** | **Sat 9/14/19** |
| 335 | Prepare Draft Responses to CA comments on PDEIS Areas Outside Their Expertise | 26 days | Mon 2/25/19 | Mon 4/1/19 |
| 336 | Catalogue Comments on DEIS | 120 edays | Tue 4/2/19 | Wed 7/31/19 |
| 337 | Identify Statements of Concern / Prepare Comment Summaries | 90 days | Wed 4/24/19 | Fri 8/30/19 |
| 338 | **Develop Comment Responses** | **90 days** | **Wed 5/8/19** | **Sat 9/14/19** |



| ID | Task Name | Duration | Start | Finish |
|---|---|---|---|---|
| 339 | Draft Comment Responses | 90 days | Wed 5/8/19 | Sat 9/14/19 |
| 340 | **SAVE THE DATE - Technical Meeting(s) with USACE & CAs** | 12 days | Mon 7/29/19 | Tue 8/13/19 |
| 341 | Technical Meeting - Social Resources | 1 day | Mon 7/29/19 | Mon 7/29/19 |
| 342 | Technical Meeting - Biological Resources | 1 day | Tue 8/13/19 | Tue 8/13/19 |
| 343 | Technical Meeting - Physical Resources | 1 day | Fri 8/2/19 | Fri 8/2/19 |
| 344 | Technical Meeting - Spill Risk | 1 day | Tue 8/6/19 | Tue 8/6/19 |
| 345 | Technical Meeting - Mitigation | 1 day | Tue 7/30/19 | Tue 7/30/19 |
| 346 | **Modify and Prepare PFEIS (incl QA/QC)** | **83 days** | **Mon 9/16/19** | **Wed 1/15/20** |
| 347 | AECOM INTERNAL DATES: Finalize Comment Responses and "Early Sectio | 30 days | Mon 9/16/19 | Mon 10/28/19 |
| 348 | AECOM INTERNAL DATES: Finalize Comment Responses and "Middle Sections" | 35 days | Mon 9/16/19 | Mon 11/4/19 |
| 349 | AECOM INTERNAL DATES: Finalize Comment Responses and "Last Section | 45 days | Mon 9/16/19 | Tue 11/19/19 |
| 350 | AECOM INTERNAL DATES: Technical Editing & Word Processing | 20 days | Tue 10/29/19 | Tue 11/26/19 |
| 351 | AECOM INTERNAL DATES: Submission Preparation | 2 days | Wed 11/27/19 | Fri 11/29/19 |
| 352 | Submit PFEIS (All Chapters and Comment-Responses Appendix) | 1 day | Mon 12/2/19 | Mon 12/2/19 |
| 353 | USACE and Cooperating Agencies Review of PFEIS | 30 days | Tue 12/3/19 | Wed 1/15/20 |
| 354 | **Final EIS (FEIS)** | **60 days** | **Thu 1/16/20** | **Fri 4/10/20** |
| 355 | Review/Incorporate Comments and Revise PFEIS (meetings w/ USACE as nec) | 32 days | Thu 1/16/20 | Tue 3/3/20 |
| 356 | Final Revisions to FEIS (incl Consistency Checks, Formatting, QA/QC) | 11 days | Wed 3/4/20 | Wed 3/18/20 |
| 357 | USACE Approves Camera-Ready Version (pg turn meetings) | 1 day | Thu 3/19/20 | Thu 3/19/20 |
| 358 | Prepare Final Print-version FEIS | 8 days | Fri 3/20/20 | Tue 3/31/20 |
| 359 | Prepare eNEPA version FEIS | 7 days | Fri 3/20/20 | Mon 3/30/20 |
| 360 | Electronic version FEIS | 8 days | Fri 3/20/20 | Tue 3/31/20 |
| 361 | FEIS Production & Distribution (incl public viewing locations, website) | 8 days | Wed 4/1/20 | Fri 4/10/20 |
| 362 | **Record of Decision** | **177 days** | **Mon 9/16/19** | **Fri 5/29/20** |
| 363 | Prepare Annotated Outline (Work Plan) | 5 days | Mon 9/16/19 | Fri 9/20/19 |
| 364 | Prepare Draft CWA 404(b)(1) Analysis | 99 days | Tue 12/3/19 | Thu 4/23/20 |
| 365 | Prepare Draft Public Interest Review | 99 days | Tue 12/3/19 | Thu 4/23/20 |
| 366 | Prepare Draft ROD | 99 days | Tue 12/3/19 | Thu 4/23/20 |
| 367 | USACE Review, Revise, and Finalize ROD | 21 days | Fri 4/24/20 | Fri 5/22/20 |
| 368 | Record of Decision Signed | 4 days | Tue 5/26/20 | Fri 5/29/20 |
| 369 | **Task 5 - Other Permits** | **420 days** | **Wed 6/27/18** | **Fri 2/28/20** |
| 373 | **Task 6 - Administrative Record** | **600 days** | **Tue 2/6/18** | **Tue 6/23/20** |



**DEPARTMENT OF THE ARMY**
**ALASKA DISTRICT, U.S. ARMY CORPS OF ENGINEERS**
**P.O. BOX 6898**
**JBER, AK 99506-0898**

13 September 2019

Office of Counsel

**VIA SAFE Site**
CY19-0119

Ms. Taryn Kiekow Heimer
Natural Resources Defense Council
1314 Second Street
Santa Monica, CA 90401

Re: Freedom of Information Act Request (FOIA)
Pebble Mine

Dear Ms. Kiekow Heimer:

This responds to your FOIA request dated 16 August 2019. You asked us to provide a copy of "all records in the Army Corps' possession, custody or control sent or received from the following email address: poaspecialprojects@usace.army.mil. As this is the second NRDC FOIA regarding these documents, please produce all records on or after March 20, 2019 – the date of NRDC's first FOIA."

The documents responsive to your request will be uploaded to the ARL Secure Access File Exchange (SAFE) site. You will receive an email from ARL SAFE when the documents are ready for you to download. Please contact FOIA Officer Erica Nutter at (907) 753-2532 if you are unable to access the documents.

We have withheld four documents pursuant to 16 U.S.C. § 470hh (b)(3), which protects disclosure of certain information concerning archaeological resources. We have withheld seven documents pursuant to 5 U.S.C. § 552 (b)(5), which protects from disclosure agency documents that are part of the deliberative process to "prevent injury to the quality of agency decisions." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). We have also withheld ten documents pursuant to 5 U.S.C. § 552 (b)(5), which protects from disclosure "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data Cent., Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977). There are no fees associated with this request.

I trust that you will appreciate the considerations upon which this determination is based. However, because your request has been partially denied you are advised of your right to appeal this determination through this office to the Secretary of the Army (ATTN: General Counsel). An appeal must be received by the appellate authority within 90 days of the date of this letter. The envelope containing the appeal should bear the notation "Freedom of Information Act Appeal" and should be sent to: Commander, Alaska District, U.S. Army Corps of Engineers, ATTN: CEPOA-OC, Post Office Box 6898, JBER, Alaska 99506-6898. You also have the right to seek dispute resolution

services from the USACE FOIA Public Liaison (foia-liaison@usace.army.mil) or the Office of Government Information Services (ogis@nara.gov).

If you have further questions, please contact Amanda Kranz or Erica Nutter at (907) 753-2532.

Sincerely,

Michael H. Gilbert
District Counsel

NRDC

**By Email**

August 16, 2019

U.S. Army Corps of Engineers FOIA Liaison
CECC-L
441 G Street NW
Washington, DC 20314-1000
Phone: (202) 761-4791
foia-liaison@usace.army.mil

Alaska District
CEPOA-OC
P.O. Box 6898
JBER, AK 99506-0898
Phone: (907) 753-2532
CEPOA-OC-FOIA@usace.army.mil

Re: Freedom of Information Act Request for Records Concerning the Proposed Pebble Mine

Dear FOIA Officer:

On behalf of the Natural Resources Defense Council ("NRDC"), I write to request the disclosure of records pursuant to the Freedom of Information Act 5 U.S.C. § 522 ("FOIA") and U.S. Army Corps of Engineers ("Army Corps") and Department of Defense regulations at 32 C.F.R. parts 518 and 286. I also request that the Army Corps waive all applicable FOIA fees and/or costs involved in fulfilling this request, as discussed below.

**I. Requested Records and Disclosure Method**

Please produce all records[1] in the Army Corps' possession, custody or control sent or received from the following email address: poaspecialprojects@usace.army.mil.[2] As this is the second NRDC FOIA regarding these documents, please produce all records on or after March 20, 2019—the date of NRDC's first FOIA.

[1] "Records" means anything denoted by the use of that word or its singular form in the text of FOIA and includes correspondence, minutes of meetings, memoranda, notes, emails, notices, facsimiles, charts, tables, presentations, orders, filings, internal messaging systems, and other writings (handwritten, typed, electronic, or otherwise produced, reproduced, or stored).
[2] Based on information and belief, this email address is used for the purposes of communicating about the Pebble Mine permitting process.

In addition, please produce all records the Army Corps' possession, custody or control regarding EPA's decision to withdraw its Proposed Determination issued under Section 404(c) of the Clean Water Act, as well as all records resulting from EPA's elevation under Section 404(q) of the Clean Water Act.

Please either email responsive records to me at tkiekowheimer@nrdc.org, or email me to request a link to a Dropbox folder where you can upload the records. Please note that my email account cannot accept .zip files. Please release responsive records to me on a rolling basis. If you determine that any of the requested records are already publicly available (for instance, published on the Army Corps' Pebble Project EIS website (https://pebbleprojecteis.com/), please provide a list of those records in lieu of production.

Please note that his request seeks responsive records in the custody of any Army Corps office, including, but not limited to, Army Corps Headquarters and the Alaska District.

## II. Request for a Fee Waiver

NRDC requests that the Army Corps waive any fee that it would otherwise charge for searching for and producing the requested records. FOIA dictates that requested records be provided without charge "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 32 C.F.R. § 518.19(d). As I explain below, NRDC's requested disclosure meets both requirements. NRDC is also "a representative of the news media" entitled to fee reduction. 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also* 32 C.F.R. § 518.19(e)(6).

### A. NRDC Satisfies the First Fee Waiver Requirement

The disclosure requested here would be "likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii); 32 C.F.R. § 518.19(d). Each of the four factors used by the Army Corps to evaluate the first fee waiver requirement indicates that a fee waiver is appropriate for this request. *See* 32 C.F.R. § 518.19(d)(2).

#### *1. The subject matter of this request involves issues that will significantly contribute to public understanding of the Corps' activities*

The records requested here concern the Army Corps' review and permitting process for the proposed Pebble Mine in Bristol Bay, Alaska. There has been enormous public interest in this project, as well as in federal agencies' oversight of the proposed mine. The records requested here specifically relate to the permitting of the proposed Pebble Mine, specifically seeking information sent to or from an email address established by the Army Corps for the specific purpose of Pebble Mine-related communication. The subject matter of this request accordingly "involves issues that will significantly contribute to public

understanding of" the Corps' activities. 32 C.F.R. § 518.9(d)(2)(i) (records that "bear directly on current activities" of the Corps are more likely to significantly contribute to the public's understanding).

### 2. *Disclosure would meaningfully inform the public about the Corps' activities*

As explained above, the requested records concern current work to permit a mine that has already attracted national public attention. The requested records are "likely to contribute to" the public's understanding of government operations and activities, 32 C.F.R. § 518.19(d)(2)(ii). While the Army Corps has established a public Pebble Project EIS website, correspondence and other records sent to and from its Pebble-related email address are not routinely published in the project library. Therefore, the public does not currently possess comprehensive information regarding the government's role in approving the proposed Pebble Mine. Given the immense opposition to the proposed project, there is more than a reasonable likelihood that these records have informative value to the public. *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Health & Human Servs.*, 481 F. Supp. 2d 99, 109 (D.D.C. 2006).

### *3. Disclosure is likely to inform the public, not just an individual requester*

NRDC has the "capability and intention to distribute the [requested] information to the public." 32 C.F.R. § 518.9(d)(2)(iii). Disclosure of the records NRDC requests here is accordingly likely to contribute to (or potentially contribute to) the general public's understanding, not just an individual's understanding. *Id.*

NRDC's extensive communications capabilities and long history of publishing information—including information obtained from FOIA records requests—indicate that NRDC has the ability and will to use disclosed records to reach a broad audience of interested persons with any relevant and newsworthy information the records reveal. There is a strong likelihood that disclosure of the requested records will increase public understanding of the Pebble Mine. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003) (finding that a requester that specified multiple channels of dissemination and estimated viewership numbers demonstrated a likelihood of contributing to public understanding of government operations and activities).

NRDC's more than three million members and online activists constitute a broad audience of persons interested in the Pebble Mine, and disclosure of information regarding the permitting of the proposed Pebble Mine to NRDC's members and activists "will inform, or have the potential to inform the public, rather than simply the individual requester or small segment of interested persons." 32 C.F.R. § 518.19(d)(2)(iii).

NRDC intends to disseminate any newsworthy information in the released records and its analysis of such records to its member base and to the broader public, through one or more of the many communications channels referenced below. NRDC has frequently disseminated newsworthy information to the public for free and does not intend to resell the information requested here. As of 2017, these channels include:

- NRDC's website, http://www.nrdc.org (sample homepage at Att. 1), is updated daily, features blogs by NRDC's scientific, legal, and other staff experts, and draws approximately 1.3 million page views and 510,000 unique visitors per month.
- NRDC's Activist email list includes more than three million members and online activists who receive regular communications on urgent environmental issues. (sample at Att. 7) This information is also made available through NRDC's online Action Center at https://www.nrdc.org/actions (Att. 8).
- NRDC updates and maintains several social media accounts with tens to hundreds of thousands of followers. Its major accounts include Facebook (906,992 followers) (Att. 2), Twitter (271,551 followers) (Att. 3), Instagram (108,315 followers) (Att. 4), YouTube (Att. 5), and LinkedIn (Att. 6).
- NRDC also is a regular contributor to Medium (1,478 followers) (Att. 9) and the Huffington Post (Att. 10).

NRDC staff also write papers and reports; provide legislative testimony; present at conferences; direct and produce documentary films; and contribute to national radio, television, newspaper, magazine and web stories and academic journals. Some examples of these contributions include:

- Article, "Interior Department worked behind the scenes with energy industry to reverse royalties rule," *Wash. Post,* Oct. 6, 2017 (discussing documents obtained through a FOIA request submitted by NRDC and quoting NRDC Senior Policy Advocate Theo Spencer) (Att. 12);
- Documentary, *Sonic Sea* (2016), featured on the Discovery Channel (directed and produced by NRDC Deputy Director of Communications Daniel Hinerfeld) (Att. 13);
- Research article, "The requirement to rebuild US fish stocks: Is it working?" *Marine Policy*, July 2014 (co-authored by NRDC Oceans Program Senior Scientist Lisa Suatoni and Senior Attorney Brad Sewell) (Att. 14);
- Issue brief, "The Untapped Potential of California's Water Supply: Efficiency, Reuse, and Stormwater," June 2014 (co-authored by NRDC Water Program Senior Attorney Kate Poole and Senior Policy Analyst Ed Osann) (Att. 15); *see also* "Saving Water in California," *N.Y. Times*, July 9, 2014 (discussing the report's estimates) (Att. 16);
- Congressional testimony, David Doniger, NRDC Climate and Air Program Policy Director and Senior Attorney, before the United States House Subcommittee on Energy and Power, June 19, 2012 (Att. 17);
- Conference brochure, "World Business Summit on Climate Change," May 2009 (featuring former NRDC Director for Market Innovation Rick Duke at 9) (Att. 18);

NRDC's legal, scientific, and other experts have a history of using information obtained through FOIA requests to inform the public about a variety of issues, including energy

policy, climate change, wildlife protection, nuclear weapons, pesticides, drinking water safety, and air quality. For example:

1. NRDC recently obtained through FOIA and publicized emails between the Trump transition team and industry officials regarding reversal of Obama-era preliminary restrictions on the proposed Pebble Mine. This cast light on an issue of considerable public interest. *See, e.g.*, Kevin Bogardus and Dylan Brown, "'Homework assignment' — how Pebble lobbied Trump's EPA," *E&E News*, June 8, 2017 (Att. 30).

2. In April 2014, NRDC used FOIA documents to prepare a report on potentially unsafe chemicals added to food, without FDA oversight or public notification. The report, *Generally Recognized as Secret: Chemicals Added to Food in the United States*, reveals concerns within the agency about several chemicals used as ingredients in food that manufacturers claim are "generally recognized as safe" (Att. 28). *See also* Kimberly Kindy, "Are secret, dangerous ingredients in your food?" *Wash. Post*, Apr. 7, 2014 (discussing report) (Att. 29).

3. NRDC obtained, through FOIA, FDA review documents on the nontherapeutic use of antibiotic additives in livestock and poultry feed. NRDC used these documents to publish a January 2014 report, titled *Playing Chicken with Antibiotics*, that reveals decades of FDA hesitancy to ensure the safety of these drug additives (Att. 26). *See also* P.J. Huffstutter and Brian Grow, "Drug critic slams FDA over antibiotic oversight in meat production," *Reuters*, Jan. 27, 2014 (discussing report) (Att. 27).

4. NRDC has used White House documents obtained through FOIA and other sources to inform the public about EPA's decision not to protect wildlife and workers from the pesticide atrazine in the face of industry pressure. *See Still Poisoning the Well: Atrazine Continues to Contaminate Surface Water and Drinking Water in the United States*, http://www.nrdc.org/health/atrazine/files/atrazine10.pdf (Apr. 2010) (update to 2009 report) (Att.24). *See also* William Souder, "It's Not Easy Being Green: Are Weed-Killers Turning Frogs Into Hermaphrodites?" *Harper's Magazine*, Aug. 1, 2006 (referencing documents obtained and posted online by NRDC) (Att. 25).

5. NRDC scientists have used information obtained through FOIA to publish analyses of the United States' and other nations' nuclear weapons programs. In 2004, for example, NRDC scientists incorporated information obtained through FOIA into a feature article on the United States' plans to deploy a ballistic missile system and the implications for global security. Hans M. Kristensen, Matthew G. McKinzie, and Robert S. Norris, "The Protection Paradox," *Bulletin of Atomic Scientists*, Mar./Apr. 2004 (Att. 23).

6. Through FOIA, NRDC obtained an ExxonMobil memorandum advocating the replacement of the sitting head of the Intergovernmental Panel on Climate

Change, and used the document to help inform the public about what may have been behind the Bush administration's decision to replace Dr. Robert Watson. *See* NRDC Press Release and attached Exxon memorandum, "Confidential Papers Show Exxon Hand in White House Move to Oust Top Scientist from International Global Warming Panel," Apr. 3, 2002 (Att. 21). *See also* Elizabeth Shogren, "Charges Fly Over Science Panel Pick," *L.A. Times*, Apr. 4, 2002, at A19 (Att. 22).

7. Through FOIA and other sources, NRDC obtained information on levels of arsenic in drinking water nationwide and used it in a report, *Arsenic and Old Laws* (2000) (Att. 19). The report explained how interested members of the public could learn more about arsenic in their own drinking water supplies. *Id. See also* Steve LaRue, "EPA Aims to Cut Levels of Arsenic in Well Water," *San Diego Union-Tribune*, June 5, 2000, at B1 (referencing NRDC's report) (Att. 20).

In short, NRDC has proven its ability to digest, synthesize, and quickly disseminate to a broad audience newsworthy information gleaned through FOIA requests like this one. Therefore, the requested records disclosure is likely to contribute to the public's understanding of the subject.

***4. Disclosure will enhance public knowledge by revealing previously unknown facts on a current subject of wide public interest.***

The same facts outlined under headings 1-3 above explain why disclosure of the requested records will "be unique in contributing previously unknown facts, thereby enhancing public knowledge," on "a current subject of wide public interest." 32 C.F.R. §519.8(d)(2)(iv). The Army Corps' permitting process of the proposed Pebble Mine has been covered in national news stories and sparked public protests. Public understanding of the process would be significantly enhanced by disclosure of the requested records.

**B. NRDC Satisfies the Second Fee Waiver Requirement**

Disclosure in this case would also satisfy the second prerequisite of a fee waiver request because NRDC does not have any commercial interest that would be furthered by the requested disclosure. 5 U.S.C. § 552(a)(4)(A)(iii); 32 C.F.R. § 518.19(d)(3). NRDC is a not-for-profit organization and does not act as a middleman to resell information obtained under FOIA. "Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'" *Rossotti*, 326 F.3d at 1312 (internal citation omitted); *see Natural Res. Def. Council v. United States Envtl. Prot. Agency*, 581 F. Supp. 2d 491, 498 (S.D.N.Y. 2008). NRDC wishes to serve the public by reviewing, analyzing, and disclosing newsworthy and presently non-public information about the subject of this request. As noted above, all work done to date by the Army Corp regarding the Pebble Mine relates to a matter of considerable public interest and concern.

Disclosure of the requested records will contribute significantly to public understanding of the underlying subject matter.

**C. NRDC is a Media Requestor**

Even if the Corps denies a public interest waiver of all costs and fees, NRDC is a representative of the news media entitled to a reduction of fees under FOIA, 5 U.S.C. § 552(a)(4)(A)(ii), and the Corps' FOIA regulations, 32 C.F.R. § 518.19(e)(6).

A representative of the news media is "any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii); *see also Elec. Privacy Info. Ctr. v. Dep't of Def.*, 241 F. Supp. 2d 5, 6, 11-15 (D.D.C. 2003) (a "non-profit public interest organization" qualifies as a representative of the news media under FOIA where it publishes books and newsletters on issues of current interest to the public); Letter from Alexander C. Morris, FOIA Officer, United States Dep't of Energy, to Joshua Berman, NRDC (Feb. 10, 2011) (Att. 40) (granting NRDC media requester status).

NRDC is in part organized and operated to gather and publish or transmit news to the public. As described earlier in this request, NRDC publishes original reporting of environmental news stories on its website, http://www.nrdc.org. Previously, NRDC published stories like these in its magazine, *OnEarth*, which has won numerous news media awards, including the Independent Press Award for Best Environmental Coverage and for General Excellence, a Gold Eddie Award for editorial excellence among magazines, and the Phillip D. Reed Memorial Award for Outstanding Writing on the Southern Environment. NRDC also publishes a regular newsletter for its more than 3 members and online activists; issues other electronic newsletters, action alerts, public reports and analyses; and maintains free online libraries of these publications. *See* 32 C.F.R. § 518.19(e)(6)(i) ("Examples of news media include . . . publishers of periodicals."). NRDC maintains a significant additional communications presence on the internet through its staff blogs on http://www.nrdc.org, which are updated regularly and feature writing about current environmental issues, through daily news messaging on "Twitter" and "Facebook," and through content distributed to outlets such as Medium. *See* OPEN Government Act of 2007, Pub. L. No. 110-175, § 3, 121 Stat. 2524 (2007) (codified at 5 U.S.C. § 552(a)(4)(A)(ii)) (clarifying that "as methods of news delivery evolve . . . such alternative media shall be considered to be news-media entities"). The aforementioned publications and media sources routinely include information about current events of interest to the readership and the public. To publish and transmit this news content, NRDC employs more than fifty staff members dedicated full-time to communications with the public, including accomplished journalists and editors. These staff members rely on information acquired under FOIA and through other means. Public interest organizations meeting the requirements "are regularly granted news representative status." *Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 282, 287-88 (D. Conn. 2012) (according media requester status to the American Civil Liberties Union).

Information obtained as a result of this request will, if appropriately newsworthy, be synthesized with information from other sources and used by NRDC to create and disseminate unique articles, reports, analyses, blogs, tweets, emails, and/or other distinct informational works through one or more of NRDC's publications or other suitable media channels. NRDC staff gather information from a variety of sources—including documents provided pursuant to FOIA requests—to write original articles and reports that are featured on its website, in its newsletters and blogs, and on other media outlets. *See Cause of Action v. Fed. Trade Comm'n*, 961 F. Supp. 2d 142, 163 (D.D.C. 2013) (explaining that an organization can qualify for media-requester status if it "distributes work to an audience and is especially organized around doing so"). NRDC seeks the requested records to aid its own news-disseminating activities by obtaining, analyzing, and distributing information likely to contribute significantly to public understanding, not to resell the information to other media organizations.

## III. Willingness to Pay Fees Under Protest

Please provide the records requested above regardless of your fee waiver decision. In order to expedite a response, NRDC will, if necessary and under protest, pay fees in accordance with the Department of Defense's FOIA regulations at 32 C.F.R. § 518.19(e) for all or a portion of the requested records. Please contact me before doing anything that would cause the fee to exceed $500. NRDC reserves its rights to seek administrative or judicial review of any fee waiver denial.

## IV. Conclusion

Thank you in advance for your prompt attention to this matter. Please feel free to call or email me with any questions.

Sincerely,

Taryn Kiekow Heimer
Senior Advocate & Deputy Director, Marine Mammal Protection
Natural Resources Defense Council
310-434-2323
tkiekowheimer@nrdc.org

*Enclosures* in support of fee waiver and reduction request:
Attachments 1-30 (single .pdf file)