BRYAN SCHRODER
United States Attorney
District of Alaska

MARK A. NITCZYNSKI
U.S. Department of Justice – ENRD
Environmental Defense Section
999 18th Street; South Terrace; Suite 370
Denver, CO 80202
Phone: (303) 844-1498; Fax: (303) 844-1350
Email: mark.nitczynski@usdoj.gov

BRIAN UHOLIK
Environment and Natural Resources Division
4 Constitution Square
150 M Street, N.E.
EDS/4th Floor
Washington, D.C. 20002
Phone: (202) 305-0733; Fax: (202) 514-8865
Email: brian.uholik@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA
## AT ANCHORAGE

| | |
|---|---|
| BRISTOL BAY ECONOMIC DEVELOPMENT CORPORATION, *et al.,* | CASE NO. 3:19-CV-00265-SLG |
| Plaintiffs, | |
| v. | |
| CHRIS HLADICK, U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.,* | |
| Defendants. | |
| SALMONSTATE, *et al.,* | CASE NO. 3:19-CV-00267-SLG |
| Plaintiffs, | |

CASE NO. 3:19-CV-00265-SLG (CONSOLIDATED)

v.

CHRIS HLADICK, U.S.
ENVIRONMENTAL PROTECTION
AGENCY, *et al.*,

                Defendants.

TROUT UNLIMITED,

                Plaintiffs,

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY, *et al.*,

                Defendants.

CASE NO. 3:19-CV-00268-SLG

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)

CASE NO. 3:19-CV-00265-SLG (CONSOLIDATED)

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT .....................................................................................................1

I. Section 701(a)(2) Bars APA Review in Many Contexts ...................................1

II. EPA's Withdrawal Decision is Presumptively Unreviewable Because it Is Akin to a Decision Not to Enforce..........................................................................3

III. There is No Law to Apply in Reviewing EPA's Exercise of Discretion ...................5

IV. Judicial Review Is Precluded Because the Withdrawal Decision Required a Complicated Balancing of Factors Peculiarly Within EPA's Expertise ...................10

    A. The "Complicated Balancing" Exception Applies Here...................................10

    B. EPA Engaged in the Complicated Balancing of Factors Peculiarly Within its Expertise.........................................................................................12

V. Decisions Addressing Denials of Petitions for Rulemaking and Withdrawals of Proposed Rules Are Inapposite Here..........................................................17

CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

**CASES**

*Alaska v. Kerry,*
  972 F. Supp. 2d 1111 (D. Alaska 2013) .................................................................3, 5, 10, 11, 20

*All. to Save the Mattaponi v. U.S. Army Corps of Eng'rs,*
  515 F.Supp.2d 1 (D.D.C. 2007) ............................................................................................ 8, 19

*Animal Legal Def. Fund v. Veneman,*
  490 F.3d 725 (9th Cir. 2007)........................................................................................................20

*Animal Legal Defense Fund v. U.S. Dep't of Agric.,*
  632 Fed. App'x 905 (9th Cir. 2015)...........................................................................................18

*Cascade Conservation League v. M.A. Segale, Inc.,*
  921 F. Supp. 692 (W.D. Wash. 1996) .................................................................................passim

*City and Cty. of San Francisco v. U.S. Dep't. of Transp.,*
  796 F.3d 993 (9th Cir. 2015).................................................................................................passim

*City of Olmstead Falls v. EPA,*
  266 F. Supp. 2d 718 (N.D. Ohio 2003) .......................................................................................8

*City of Santa Clara, Cal. v. Andrus,*
  572 F.2d 660 (9th Cir. 1978)..............................................................................................6, 7, 9

*Coeur Alaska Inc. v. Se. Alaska Conservation Council,*
  557 U.S. 261 (2009).......................................................................................................................19

*Dep't. of Commerce v. New York,*
  139 S. Ct. 2551 (2019)....................................................................................................................2

*E.J. Friedman Co., Inc. v. United States,*
  6 F.3d 1355 (9th Cir. 1993).......................................................................................................2, 6

*Heckler v. Chaney,*
  470 U.S. 821 (1985)................................................................................................................passim

Case 3:19-cv-00265-SLG   Document 42   Filed 01/21/20   Page 4 of 28

*Hinck v. United States,*
    550 U.S. 501 (2007) ................................................................................................3

*Lincoln v. Vigil,*
    508 U.S. 182 (1993) ......................................................................................... 2, 10

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ...................................................................................17, 18, 19

*Mingo Logan Coal Co. v. EPA,*
    714 F.3d 608 (D.C. Cir. 2013) ................................................................................8

*Newman v. Apfel,*
    223 F.3d 937 (9th Cir. 2000).................................................................................10

*Newport Galleria Group v. Deland,*
    618 F. Supp. 1179 (D.D.C. 1985) ..........................................................................8

*Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs,*
    915 F. Supp. 378 (N.D. Ga. 1995) *aff'd* 87 F.3d 1242 (110th Cir. 1996) ..........6, 7, 8

*Strickland v. Morton,*
    519 F.2d 467 (9th Cir. 1975).................................................................................9

*Webster v. Doe,*
    486 U.S. 592 (1988) ......................................................................................... 2, 6


**STATUTES**

5 U.S.C. § 701(a)(2) ...................................................................................... 1, 2

33 U.S.C. § 1319 ...............................................................................................4

33 U.S.C. § 1344(c).......................................................................................4, 5, 7

33 U.S.C. § 1365(a)(2)........................................................................................7

42 U.S.C. § 7607(b)(1) ......................................................................................17

## RULES

Fed. R. Civ. P. 12(b)...........................................................................................................1

## REGULATIONS

40 C.F.R. § 230.10(c) ......................................................................................................14

40 C.F.R. § 231.2(e)........................................................................................................14

40 C.F.R. §§ 231.3-231.6 ...............................................................................................12

40 C.F.R. § 231.3(a).............................................................................................9, 13, 19

40 C.F.R. § 231.3(a)(1)....................................................................................................14

40 C.F.R. § 231.3(a)(2)....................................................................................................14

40 C.F.R. § 231.5(a)...........................................................................................................9

40 C.F.R. § 231.6 .............................................................................................................14

## FEDERAL REGISTER NOTICES

44 Fed. Reg. 58,076 (Oct. 9, 1979).......................................................................9, 13, 14

84 Fed. Reg. 45,749 (Aug. 30, 2019) ...............................................12, 13, 14, 15, 16

## OTHER AUTHORITIES

S. REP. NO. 116-123 (2019) ..............................................................................................5

## INTRODUCTION

These cases should be dismissed. This Court should apply the case law from the Supreme Court, the Ninth Circuit and the District Courts dismissing apposite cases, including under section 404(c). *See, e.g., Heckler v. Chaney*, 470 U.S. 821 (1985); *City and Cty. of San Francisco v. U.S. Dep't. of Transp.*, 796 F.3d 993 (9th Cir. 2015); *Cascade Conservation League v. M.A. Segale, Inc.*, 921 F. Supp. 692 (W.D. Wash. 1996).

The Clean Water Act ("CWA") and the implementing regulations promulgated by the United States Environmental Protection Agency ("EPA") fully commit to EPA's discretion the decision to withdraw the Proposed Determination for the Pebble Mine project under CWA section 404(c). The CWA and EPA's implementing regulations provide no law to apply to the withdrawal decision, and this Court should reject Plaintiffs' attempt to import a standard of review that applies to final decisions to *impose* restrictions under section 404(c). Furthermore, EPA's decision involved the complicated balancing of factors peculiarly within the Agency's expertise, an issue that Plaintiffs almost completely ignore.

Accordingly, review of the withdrawal decision is precluded by section 701(a)(2) of the Administrative Procedure Act ("APA"). Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b) ("Motion"), ECF 36, should be granted.

## ARGUMENT

## I.    Section 701(a)(2) Bars APA Review in Many Contexts.

While the APA contains a waiver of the United States' sovereign immunity to review certain agency actions, that waiver does not apply here because the APA precludes judicial review of agency actions that are "committed to agency discretion by law." 5 U.S.C. §

701(a)(2). *See E.J. Friedman Co., Inc. v. United States*, 6 F.3d 1355, 1359-60 (9th Cir. 1993). The parties agree that section 701(a)(2) stakes out "a very narrow exception" to APA review, and Plaintiffs do not dispute that "the § 701(a) hurdle must be cleared 'before any review at all may be had' under the APA." *Id.* at 1359 (quoting *Heckler*, 470 U.S. at 828).

The section 701(a)(2) exception applies where there are no "judicially manageable standards," or essentially "no law to apply," in evaluating the agency's exercise of discretion. *Heckler*, 470 U.S. at 830. Section 701(a)(2) also bars review when "the agency's action requires a complicated balancing of a number factors which are peculiarly within [the agency's] expertise." *See*, *e.g.*, *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). Particularly when assessing the "no law to "apply" exception, the courts' assessment of whether review is precluded by section 701(a)(2) addresses, first and foremost, the statutory language under which the agency decision was made. Motion at 24; *see*, *e.g., Webster v. Doe*, 486 U.S. 592, 600 (1988); *see also Dep't. of Commerce v. New York*, 139 S. Ct. 2551, 2568-69 (2019) (contrasting the statutory language at issue with that in *Webster*, and concluding that the language constrained the agency's discretion in ways that applied to the agency action being challenged).

Although Plaintiffs place heavy weight on the Supreme Court's statement that it "generally" has limited the section 701(a)(2) exception to categories of decisions that courts "traditionally" have regarded as committed to agency discretion by law, *see*, *e.g.*, Plaintiffs' Joint Opposition to Defendants' Motion to Dismiss ("Opp." or "Opposition"), ECF 38, at 17, 18, 24, 37 (citing *Dep't. of Commerce*, 139 S. Ct. at 2568), that reliance is misplaced. In fact, the Supreme Court, the Ninth Circuit and this Court have applied that exception in a variety of contexts. *See* Motion 22-23. For example, the Ninth Circuit was among the Courts of

Appeals that uniformly held that IRS decisions not to abate interest were unreviewable because the statue's discretionary language provided "no law to apply." *See* Motion at 22-23 & 23 n.11. The Supreme Court expressed its approval of those decisions. *Hinck v. United States*, 550 U.S. 601, 503-04, 506-08 (2007). This Court then relied on *Hinck* in holding that the discretionary language in the Act to Prevent Pollution From Ships provided "no law to apply." *Alaska v. Kerry*, 972 F. Supp. 2d 1111, 1132-34 (D. Alaska 2013) ("neither *Hinck* nor the instant case is a case challenging an agency decision not to prosecute.").

## II.     EPA's Withdrawal Decision is Presumptively Unreviewable Because it Is Akin to a Decision Not to Enforce.

EPA's withdrawal decision is "presumptively unreviewable" under the APA because the decision was akin to a decision not to enforce. *See* Motion at 25-26. Plaintiffs posit a variety of arguments in response, but they fail to undermine that basic point.

Plaintiffs concede that the section 701(a)(2) exception applies presumptively to agency decisions "not to enforce" civilly or criminally. Opp. at 18-19. Without clear indication by Congress to allow judicial review, such decisions are not subject to review because of their particular discretionary nature. The courts have attached this presumption to a range of decisions, including EPA's decision not to pursue a section 404(c) proceeding. *See*, *e.g.*, *Heckler*, 470 U.S. at 824-25; *City and Cty. of San Francisco*, 796 F.3d at 1001-03; *Cascade Conservation League v. M. A. Segale, Inc.*, 921 F. Supp. at 699.

Here, EPA determined that it would not (at this time) exercise its section 404(c) authority. That authority is a form of enforcement power. It authorizes EPA to undertake an adjudicatory proceeding that determines whether to prohibit or restrict a regulated party's ability to discharge dredged or fill material. Those prohibitions or restrictions effectively

enjoin discharges. Section 404(c) also gives EPA unusually broad discretion about when to act. *See* 33 U.S.C. § 1344(c) ("The Administrator is authorized to" act "whenever he determines" that there will be an "unacceptable adverse effect" on certain resources). Given those hallmarks of enforcement authority, EPA's decision not to impose prohibitions or restrictions here was a decision "not to enforce" that is analogous to prosecutorial discretion. *See City and Cty. of San Francisco*, 796 F.3d at 1001-02.

Plaintiffs' arguments in response are unavailing. Plaintiffs argue that EPA's decision is not akin to enforcement because EPA's section 404(c) authority is "regulatory." Opp. at 18. That purported distinction fails. EPA routinely makes enforcement determinations at the administrative or "regulatory" level. EPA has many regulatory authorities under the CWA that are recognized as "[e]nforcement." *See* 33 U.S.C. § 1319.

In addition, Plaintiffs concede that the exercise of EPA's authority under section 404(c) has been acknowledged as "enforcement." Opp. at 24 (discussing *Cascade Conservation League*, 921 F. Supp. at 699). Indeed, *Cascade Conservation League* held that EPA's decision not to pursue a section 404(c) determination was a "decision not to take enforcement action" that was presumptively unreviewable. 921 F. Supp. at 699. The court then dismissed the APA claim under section 701(a)(2). *Id.* Plaintiffs attempt to distinguish *Cascade Conservation League* on the basis that it involved EPA's failure to initiate a 404(c) process. Opp. at 24. But that distinction is unpersuasive and, moreover, is irrelevant to whether EPA's decision not to pursue a 404(c) determination was a decision "not to enforce."

Furthermore, in the particular context of the proposed Pebble Mine, a Senate Report recently agreed that the exercise of EPA's section 404(c) authority constitutes

"enforcement." Issued this fall, the Report encouraged several agencies working with the Corps' permitting process, including EPA, "to exercise their discretionary authorities" at an appropriate time during that process "to ensure the full protection of the region." S. Rep. No. 116-123, at 87 (2019). The Report specified that those authorities included "EPA's enforcement authority under the Clean Water Act." *Id.*[1]

Because EPA's withdrawal decision was akin to a decision not to enforce, there is a presumption against judicial review here—a presumption that Plaintiffs cannot overcome.

## III. There is No Law to Apply in Reviewing EPA's Exercise of Discretion.

As this Court has recognized, under section 701(a)(2), "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Kerry*, 972 F. Supp. 2d at 1131. Consistent with that law, our Motion discussed the fact that the substantive portions of section 404(c) are drafted in terms of broad discretion, and provide "no law to apply" in reviewing EPA's withdrawal decision. Motion at 26-31; *see* 33 U.S.C. § 1344(c) (EPA Administrator "is *authorized to*" take 404(c) action "*whenever he determines*" that the discharge "will have an *unacceptable* adverse effect" on specified areas) (emphasis added). In selecting these terms, Congress used the "classic language of discretion." *City and Cty. of San Francisco*, 796 F.3d at 1002). Indeed, while Plaintiffs fail to address this fact, the "is authorized to" language is the same phrasing that the Supreme Court in *Heckler* determined gave "complete discretion" to the agency to

---

[1] Plaintiffs also recognize that the Ninth Circuit held in *City and County of San Francisco* that the agency's failure to exercise regulatory authority was presumptively unreviewable as a "decision not to enforce" or a "close analog" thereof. Opp. at 22.

decide how and when its authority should be exercised. Motion at 27. *See, e.g., Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 915 F. Supp. 378, 381 (N.D. Ga. 1995) (discussing the use of "authorized" in *Heckler* to support conclusion that EPA's section 404(c) authority is unreviewable because it is "committed to agency discretion by law"), *aff'd* 87 F.3d 1242 (11th Cir. 1996).

In addition, the language of section 404(c) is strikingly similar to that in other cases where the Supreme Court and Ninth Circuit have held that there was "no law to apply." For example, in *Webster*, the Supreme Court addressed statutory language providing that the CIA Director "*may*, in his discretion, terminate . . . employment . . . *whenever* he shall *deem* such termination *necessary or advisable* in the interests of the United States . . . ." 486 U.S. at 594 (emphasis added). That language "fairly exudes deference" to the agency. *Id.* at 600.

Similarly, in *City and County of San Francisco*, the Ninth Circuit encountered language that stated, "*[i]f* . . . the [agency] *decides* the State authority is not enforcing *satisfactorily* compliance with applicable safety standards . . ., the [agency] *may*" take certain actions. 796 F.3d at 996, 1002-03 (emphasis added). The Ninth Circuit concluded that the language contained the "classic language of discretion" and provided "no indication that Congress intended to restrict agency discretion." *Id.* at 1002. *See also E.J. Friedman Co.*, 6 F.3d at 1359-60 (statutory text authorizing discharge of tax lien "*if*" the IRS "*determines at any time*" that the United States' interest in the subject property has "*no value*" provided "no standard against which to judge the IRS's exercise of discretion"); *City of Santa Clara, Cal. v. Andrus*, 572 F.2d 660, 667-68 (9th Cir. 1978) (statutory provision that required the agency to sell power "in

such manner as to encourage the most widespread use thereof consistent with sound business principles" was "too vague and general to provide law to apply.").[2]

Plaintiffs do not contest that, to inform whether there is "law to apply," the courts—including this one—will look to the contrast between mandatory and discretionary language in the statutory text. *See* Motion at 29-30. Plaintiffs also do not dispute that the discretionary language in section 404(c) applicable to EPA's potential determination regarding whether the discharge will have an "unacceptable adverse effect" contrasts with the mandatory "shall" language that occurs later in that section. *See id;* 33 U.S.C. § 1344(c); *see also Cascade Conservation League*, 921 F. Supp. at 698.

Unsurprisingly then, the courts have emphasized the discretionary nature of EPA's actions under section 404(c). With one outlier exception, they have upheld the United States' position that EPA's decisions under section 404(c)—short of an affirmative final determination—are not reviewable. *See* Motion at 28 n.13. At least one of those cases held in part that EPA does not have a "nondiscretionary duty" under CWA section 505(a)(2), 33 U.S.C. § 1365(a)(2), to pursue a section 404(c) action. *See Cascade Conservation League*, 921 F. Supp. at 698-99; *see also Preserve Endangered Areas of Cobb's History, Inc.,* 915 F. Supp. at 381.

---

[2]  In addressing whether there is "law to apply" here, Plaintiffs seek to distinguish cases that we cited to address the separate point that courts have applied section 701(a)(2) in many contexts. *See* Motion at 22-23; Opp. at 35-36. We need not address all of those cases here. The fundamental point remains that section 404(c) does not provide "law to apply" to EPA's withdrawal decision, consistent with the law discussed in our Motion and herein.

More importantly here, those cases and others addressed whether EPA's exercise of section 404(c) authority was "committed to agency discretion by law" under section 701(a)(2). *See, e.g., City of Olmstead Falls v. EPA*, 266 F. Supp. 2d 718, 722-23 (N.D. Ohio 2003); *Preserve Endangered Areas of Cobb's History, Inc.,* 915 F. Supp. at 381; *Cascade Conservation League*, 921 F. Supp. at 698-99. All of these cases focused on the language of section 404(c) and determined that EPA's decision not to pursue its discretionary section 404(c) authority was unreviewable under the APA.

Other cases also point to EPA's wide discretion under section 404(c). *See, e.g., Newport Galleria Group v. Deland*, 618 F. Supp. 1179, 1181-82, 1186 (D.D.C. 1985) (in dismissing a challenge to EPA's initiation of section 404(c) process, discussing EPA's "wide discretion" under section 404(c) and "broad standards" under EPA's regulations); *see also Mingo Logan Coal Co. v. EPA*, 714 F.3d 608, 612-14 (D.C. Cir. 2013).[3]

Amidst this discretionary backdrop for EPA's section 404(c) decisionmaking, section 404(c) says *nothing* about withdrawals of proposed determinations. Plaintiffs do not dispute this point. Similarly, EPA's regulations do not specify any standard for withdrawing

---

[3] The one outlier case, which held that EPA did not have a "nondiscretionary duty" under section 404(c) but decided that EPA's decision not to initiate section 404(c) proceedings was reviewable under the APA, arose in a different context, is otherwise distinguishable, and is incorrect anyway. *See Alliance to Save the Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F.Supp.2d 1, 7-9 (D.D.C. 2007). That case arose after the Corps had *issued* the permit, and so EPA had the full record from the Corps' proceedings before it. *Id.* at 3. In addition, the court was bound by the D.C. Circuit's "repeated[]" and "narrow[]" readings of *Heckler. Id.* at 8-9. That contrasts with the Ninth Circuit's application of *Heckler* in *City and County of San Francisco.* For the reasons discussed above and herein, this Court should instead follow the cases discussed above, which correctly declined to review EPA's decisions not to act.

proposed determinations. *See* Motion at 30-31. Plaintiffs also do not dispute that proposed

determinations occur early in the process of EPA's section 404(c) review. *See, e.g.,* Motion at

31. Indeed, the regulations discuss proposed determinations as part of EPA's *initiation* of the

404(c) process. 40 C.F.R. § 231.3(a). Nor do Plaintiffs dispute that the withdrawal of a

proposed determination does not impose constraints under section 404(c).

Nonetheless, Plaintiffs argue incorrectly that, because an affirmative EPA final

determination under section 404(c) would address "unacceptable adverse effects," that

standard should be used to judge EPA's withdrawal of the Proposed Determination. Opp.

at 18, 26-27. Neither the text of the CWA nor the text of EPA's regulations regarding

withdrawal of a proposed determination support that result. *See* 40 C.F.R. § 231.5(a); *see also*

44 Fed. Reg. 58,076, 58,082 (Oct. 2, 1979) (issuing a proposed determination "does not

represent a judgment that discharge of dredged or fill material will result in unacceptable

adverse effects; it merely means that the [RA] believes that the issue should be explored.").

In assessing whether an action is committed to agency discretion by law, the test is

"whether 'in a given case' there is no law to be applied." *Strickland v. Morton*, 519 F.2d 467,

470 (9th Cir. 1975). Thus, "the existence of some law generally applicable to the subject

matter in question will not necessarily remove administrative action from the 'committed to

agency discretion' rubric." *City of Santa Clara, Cal.*, 572 F.2d at 666. Instead, there is law to

apply "only if a specific statute limits the agency's discretion to act in the manner which is

challenged." *Id.* Here, section 404(c) establishes a standard by which to judge an EPA

decision to act—the Agency can only impose prohibitions or restrictions to address

"unacceptable adverse effects."  However, it gives EPA extraordinarily broad discretion in deciding *when* to act, including when *not* to act, and provides no law to apply here.

## IV.  Judicial Review Is Precluded Because the Withdrawal Decision Required a Complicated Balancing of Factors Peculiarly Within EPA's Expertise.

Section 701(a)(2) also precludes review where the challenged decision requires the complicated balancing of factors peculiarly within the agency's expertise.  Motion at 23-24, 31-35.  Our Motion explained that this basis for unreviewability was particularly strong here because of the complex factual and legal background that informed EPA's decision.  *Id.* at 31-35.  Plaintiffs' Opposition seeks mainly to avoid these issues by improperly focusing on whether there is "law to apply" and by arguing incorrectly that this exception does not apply in this case.  In addition, Plaintiffs' suggestions that this case did not implicate the "complicated balancing" exception is contradicted directly by the circumstances here.

### A.  The "Complicated Balancing" Exception Applies Here.

Rather than focusing on EPA's "complicated balancing," Plaintiffs devote much of the briefing here to whether there is "law to apply."  *See* Opp. at 37-39, 40.  In part, Plaintiffs focus on the "no law to apply" exception in reaction to the statement in *Kerry* that the Ninth Circuit has limited the "complicated balancing" exception to "those situations in which there is no meaningful standard against which to judge an agency's decision not to act."  *Kerry*, 972 F. Supp. 2d at 1135; *see* Opp. at 37.  However, the Ninth Circuit has not always addressed the exception so narrowly, *see Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000), and the Supreme Court has applied the exception outside the enforcement context. *See, e.g., Lincoln*, 508 U.S. at 192-94 (declining to review agency's allocation of a lump sum appropriation in order "to give [the] agency the capacity to adapt to changing circumstances and meet its

statutory responsibilities in what it sees as the most effective or desirable way"). In addition, limiting this exception to where there is "no meaningful standard" improperly blurs the "no law to apply" exception with the "complicated balancing" exception. But in any event, there is no "law to apply" in reviewing EPA's withdrawal decision, so there is no such barrier to applying the "complicated balancing" exception here. Motion at 26-31; *supra* at 7-12.[4]

Plaintiffs rely on *Kerry* to suggest incorrectly that the "complicated balancing" exception should not apply here because EPA made an "affirmative decision." *See* Opp. at 38. In *Kerry*, this Court declined to apply the exception to an agency decision because that decision resulted in the imposition of more stringent regulatory requirements. 972 F. Supp. 2d at 1113-1115, 1135. Those requirements resulted from agency inaction because they were to be imposed unless the agency took action to object. *Id.* at 1117. This Court determined that the agency inaction was not a "decision not to act" because the Court considered the agency's lack of objection to be an "affirmative decision" to accept the more stringent requirements. *Id.* at 1135. Thus, in determining whether there was an agency "decision not to act," the critical question was whether the agency's decision resulted in the imposition of the more stringent regulatory restrictions. In this case EPA made a "decision not to act" because it decided *not* to pursue the regulatory constraints under section 404(c).

---

[4] Plaintiffs also allege that the CWA and EPA's implementing regulations provide standards to review EPA's decision, and so this Court could resolve Plaintiffs' claims by addressing "legal questions" within the Court's purview. Opp. at 37-39, 40. As discussed, however, there is no law to apply to review EPA's decision, and importing the "unacceptable adverse effects" standard into review of EPA's withdrawal decision would be improper.

Relatedly, Plaintiffs fail to persuasively distinguish *City and County of San Francisco*. Plaintiffs describe that case as involving "agency inaction that turned on balancing resources rather than statutory standards." Opp. at 38. However, EPA's decision here also turned on the complicated balancing of factors, and expressly did not address statutory standards. *See, e.g.*, 84 Fed. Reg. 45,749, 45,756 (Aug. 30, 2019). In addition, as discussed in the paragraph above, EPA's decision here was one of inaction—that is, EPA decided *not to act* at this time.

### B.    EPA Engaged in the Complicated Balancing of Factors Peculiarly Within its Expertise.

Plaintiffs' argument that EPA did not base its withdrawal decision "on any complicated balancing of factors," Opp. at 36; *see also* Opp. at 39-41, simply does not square with the background of this case. While EPA's decision expressly (and appropriately here) did not address whether the discharges would result in "unacceptable adverse effects," EPA's withdrawal notice focused on *numerous* factors that EPA balanced.

For example, the Proposed Determination was five years old when EPA withdrew it, even though EPA's regulations envision that the time from initiating a section 404(c) process until taking a final 404(c) action would last only several months. 40 C.F.R. §§ 231.3-231.6. And because EPA issued the Proposed Determination before a permit application was submitted, the Proposed Determination addressed *hypothetical* scenarios that were superseded by the application and the project-specific information that had been, and would continue to be, developed during the multi-year permitting process. 84 Fed. Reg. at 45,752-56.

EPA also explained that separate opportunities became available to address its concerns directly with the Corps, including under the agencies' "404(q) Memorandum." *See, e.g.,* 84 Fed. Reg. at 45,751-53. While Plaintiffs largely ignore this issue, our Motion set forth

some of the detailed input that EPA has provided. For example, in July 2019, EPA warned that fish spawning and rearing habitats "need to remain both sufficiently represented and connected, throughout the project area, to sustain resiliency and persistence of fish populations." AR 12,595 at 196198. EPA also commented that the draft Environmental Impact Statement "likely underestimates impacts and risks to groundwater and surface water flows, water quality, wetlands, aquatic resources, and air quality," and that it is "essential to more fully evaluate and disclose the potential impacts and identify practicable measures to mitigate those impacts." *Id.*[5]

Plaintiffs also fail to acknowledge EPA's explanation that the well-established processes of analysis and coordination between the agencies may resolve such concerns. 84 Fed. Reg. at 45,755. Likewise, although EPA's regulations allow for EPA to engage in a separate section 404(c) review during the Corps' processing of a permit application, Plaintiffs fail to recognize that the regulations clarify that the more customary process is for EPA to engage first in the Corps' permitting process. *See* Motion at 16-17. In the "normal" course, the Regional Administrator would consider the record developed during the permitting process when evaluating whether to *initiate* a section 404(c) proceeding. 84 Fed. Reg. at 45,752; *see* 40 C.F.R. § 231.3(a) (these processes "will normally be exhausted" prior to a decision to initiate). This approach also is consistent with the preamble to the section 404(c) regulations. 44 Fed. Reg. 58,080 (quoted at 84 Fed. Reg. at 45,752) (the section 404(c) process "will ordinarily be preceded by an objection to the permit application."). Generally,

---

[5] This is a very small sampling of EPA's comments, which cumulatively surpassed 150 pages in length. *See generally* AR 12,595; *see also* Motion at 14, 33.

EPA will first comment and consult with the Corps "at all appropriate stages of the permit process" before using section 404(c), which "may be regarded as a tool of last resort." *Id.* Accordingly, "[t]he Corps should have the first opportunity to consider project-specific information here without having to contend with a 404(c) proposal that does not account for all of the available information." 84 Fed. Reg. at 45,755.[6]

EPA also discussed the Corps' involvement in EPA's section 404(c) process. That involvement also may resolve differences between the agencies. The Corps plays the key role in identifying and incorporating "corrective action" measures that may prevent an "unacceptable adverse effect" from occurring. 84 Fed. Reg. at 45,752, 45,755; *see* 44 Fed. Reg. at 58,081. Consistent with the Corps' role in the permitting process, EPA's regulations call for the Corps to be engaged throughout the section 404(c) process. 40 C.F.R. §§ 231.3(a)(1), (2), 231.6; *see* 84 Fed. Reg. 45,752, 47,555. Whereas the Corps' engagement in the 2014 process was limited because there was no permit application pending, the current process puts the Corps in a much better position to provide information during a 404(c) review regarding potential corrective action. 84 Fed. Reg. at 45,755.

Accordingly, EPA's decision here brought the exercise of the Corps' section 404(a) permitting authority *and* EPA's section 404(c) authority into accord with the agencies' more "normal" processes. *See* 84 Fed. Reg. at 45,755 (the approach "will ensure that both agencies

---

[6] As the permitting authority, the Corps plays a central role in ensuring that any discharge of dredged or fill material complies with the CWA section 404(b)(1) Guidelines. *See* Motion at 4, 17 n.9. As Plaintiffs point out, both the 404(b)(1) Guidelines and the "unacceptable adverse effects" standard address whether the discharge will cause "significant degradation" of the environment. Opp. at 4-6. *See* 40 C.F.R. §§ 230.10(c); 231.2(e).

CASE NO. 3:19-CV-00265-SLG (CONSOLIDATED) - 14

will be able to consider the full record and engage on issues consistent with their respective roles provided for under the Clean Water Act and EPA's implementing regulations").

Furthermore, while Plaintiffs barely acknowledge the issue, EPA also balanced the fact that it retains its legal authorities under CWA section 404. As discussed in our Motion and above, EPA has exercised authorities under the 404(q) Memorandum and retains its authority to elevate the permitting decision as set forth there. In addition, EPA emphasized that it retains its authority to initiate a new section 404(c) review process. 84 Fed. Reg. at 45,754-56. Importantly, that process would be based on the recently developed, voluminous, and full record. 84 Fed. Reg. at 45,754. Accordingly, issuing a new proposed determination in that process would ensure "meaningful public engagement through the public comment period" rather than relying on the public engagement process that occurred for the outdated and superseded Proposed Determination. 84 Fed. Reg. at 45,754.

For these reasons and more, it was "most appropriate" for EPA to participate in the ongoing permitting process, and first use that process in an effort to resolve issues between the agencies, rather than continue with the outdated 404(c) process. 84 Fed. Reg. 45,755; *see also id.* at 45,754 (the "appropriate sequencing" was to work first through that usual process).

Plaintiffs acknowledge that EPA determined that it was "better to prioritize its work on the current, permit-related processes rather than on the process involving a 2014 Proposed Determination." *See* Opp. at 39 (quoting Motion at 34). Nonetheless, Plaintiffs question EPA's balancing of factors regarding whether EPA should have continued to rely on the 2014 Proposed Determination. Opp. at 39-41. Plaintiffs ignore that EPA is in a far better position to balance the numerous factors at issue for the Agency than Plaintiffs are.

In addition, Plaintiffs' argument that EPA could have continued to leave in place the 2014 Proposed Determination is inapposite. *See* Opp. at 39-40. While there was more than one course that EPA legitimately could have pursued here, EPA's decision entailed "complicated balancing." *See*, *e.g.*, 84 Fed. Reg. at 45,753; *id.* at 45,755. *See also* Motion at 18 n.10.[7]

Plaintiffs inappropriately attempt to brush aside the point that EPA undertook its balancing and decisionmaking within the context of the intricate relationship between the Corps and EPA that Congress established through its CWA compromise. *See* Motion at 4-6, 34-35. The Ninth Circuit has specified that this is the sort of relationship that "courts are not institutionally well-equipped to micromanage . . . ." Motion at 34-35 (quoting *City and Cty. of San Francisco*, 796 F.3d at 1002). While the federal-state relationship at issue in *City and County of San Francisco* was not identical to the relationship between the Corps and EPA under the CWA—indeed, Plaintiffs acknowledge that the EPA-Corps relationship is the more intricate one—the intricacies of the relationship that Congress established in the CWA raises the same important concerns about judicial involvement here.

Finally, as the facts and legal framework of this matter demonstrate, this case is no ordinary one involving agency priorities. The complicated and unique circumstances of this

---

[7]  Likewise, Plaintiffs' assertion that EPA is "abandoning" the prior analysis that informed the 2014 Proposed Determination, along with Plaintiffs' suggestion that EPA is not acting to protect important resources, are misplaced. In the 2017 settlement that resolved the prior lawsuit under the Federal Advisory Committee Act, AR 12472, EPA expressly reserved its rights to "use the Bristol Bay Watershed Assessment without any limitation," and so EPA may well rely on that analysis. That does not mean, however, that it is improper for EPA to decide to focus *first* on the ongoing permitting process, its engagement with the Corps and other agencies, and the new, voluminous record that is being developed. In that context, EPA continues to work for environmental protections for the Bristol Bay region.

case call out for applying the "complicated balancing" exception to allow EPA to retain the "regulatory flexibility" needed here. *City and Cty. of San Francisco*, 796 F.3d at 1002. [8]

## V. Decisions Addressing Denials of Petitions for Rulemaking and Withdrawals of Proposed Rules Are Inapposite Here.

Plaintiffs argue incorrectly that case law from denials of petitions for rulemaking and withdrawals of proposed rulemakings should apply here. Those cases address rulemakings, whereas this case involves an informal adjudication. In addition, none of those cases address legal or factual contexts similar to the unique circumstances here. Furthermore, as we have discussed, EPA's withdrawal decision was a "decision not to enforce" and is unreviewable under section 701(a)(2). Finally, the factors that led courts to review agency decisions in those other contexts do not support review here.

As a threshold matter, *Massachusetts v. EPA*, 549 U.S. 497 (2007), which is the only case Plaintiffs cite here that would serve as binding precedent, should be quickly distinguished on the critical issue of reviewability. *Massachusetts* addressed the denial of a rulemaking petition under a statute that "expressly permit[ted] review" of the agency's denial. *Id.* at 528 (citing 42 U.S.C. § 7607(b)(1)). No such review provision applies here.

In addition, *Massachusetts* and the other petition denial cases upon which Plaintiffs rely emphasized that refusals to initiate rulemaking are "more apt [than decisions not to enforce] to involve legal as opposed to factual analysis." 549 U.S. at 527. *Massachusetts* addressed that situation because EPA had concluded in the petition denial that it did not have statutory

---

[8] Relatedly, dismissal of this case would not affect Plaintiffs' ability to challenge a section 404 permit if the Corps were to issue one. *See* Motion at 4, 17 n.9; *supra* at 16 n.6.

authority to regulate the emissions at issue.  *See id.* at 528-32.  The Ninth Circuit confronted a similar issue in *Animal Legal Defense Fund v. U.S. Department of Agriculture*, 632 Fed. App'x 905, 907 (9th Cir. 2015), where the agency premised its petition denial on a question of statutory construction.[9]  However, as opposed to turning on statutory construction issues, this case presents no law to apply in assessing EPA's decision.  *See* Motion at 26-30; *supra* at 7-12.  In addition, in *Animal Legal Defense Fund*, the Ninth Circuit explained that the agency's petition denial "was *not* based on its evaluation of resource constraints or institutional priorities, which are the hallmark of *Heckler*-type enforcement decisions."  632 Fed. App'x at 907 (emphasis added).  In contrast, EPA's decision here *was* based on such "hallmark" issues.  *See* Motion at 14-19; *supra* at 12-19.

Similarly, the rationale that petition denials are "subject to special formalities, including a public explanation," *Massachusetts*, 549 U.S. at 527, also does not support review here.  Indeed, EPA's public explanation for its decision demonstrates precisely why judicial review of the decision should *not* occur.  EPA's decision focused on how, in this unique case, EPA conducted the "complicated balancing" in addressing the sort of "hallmark" issues that are not appropriate subjects for judicial review.  So while the public explanation rationale fits well with petition denial cases that turn on issues of statutory construction—which the courts are well-equipped to address—it does not support review here.

The remaining rationale that Plaintiffs posit, that petition denials are "less frequent" than decisions not to enforce, Opp. at 19, also does not square with the context here.  As

---

[9]  Because that case was not selected for publication, it is not precedent under Ninth Circuit Rule 36-3(a).  We address it here, however, because Plaintiffs cited it in their Opposition.

discussed above, EPA's decision here *was* akin to a decision not to enforce.  In addition, while Plaintiffs argue that withdrawals of proposed determinations are infrequent, Opp. at 22, Plaintiffs' reviewability arguments leave no meaningful distinction between reviewing withdrawal of a proposed determination versus reviewing an EPA decision not to initiate a section 404(c) process in the first place.  As Plaintiffs point out, the "unacceptable adverse effects" standard occurs throughout EPA's regulations.  Opp. at 27.  Indeed, that language applies even to the Regional Administrator's first assessment, which would occur *before initiating* a section 404(c) proceeding.  40 C.F.R. § 231.3(a).  Along these lines, Plaintiffs also rely on *Mattaponi*, which allowed review of EPA's decision not to *initiate* a section 404(c) proceeding.  Opp. at 25, 27.  Accordingly, adopting Plaintiffs' position regarding reviewability risks subjecting to review every EPA decision not to initiate a section 404(c) review process.  *See Cascade Conservation League*, 921 F. Supp. at 698 (correctly rejecting plaintiff's interpretation that section 404(c) "*require[s]* the Administrator to consult with the Corps and to make written findings every time the Corps makes a [permit] determination, and then decide whether to veto that determination") (emphasis in original).  Thus, contrary to their suggestion, Plaintiffs' position would implicate a vast number of EPA decisions.  *See Coeur Alaska Inc. v. Se. Alaska Conservation Council*, 557 U.S. 261, 303 n. 5 (Ginsburg, J, dissenting) (2009) (EPA had made a dozen affirmative section 404(c) final determinations over 36 years, which encompassed more than one million permit applications).[10]

_____

[10]  Furthermore, while Plaintiffs suggest that *Massachusetts* "limited" *Heckler*, both the Ninth Circuit and this Court have continued to rely heavily on *Heckler*, without questioning its legal

Plaintiffs' reliance on cases regarding the withdrawal of proposed rules suffers from similar defects. *See* Opp. at 20-21. For example, similar to the second rationale discussed above, Plaintiffs emphasize that there (presumably) would be an explanatory document that explains the agency's decision in both situations. *Id.* However, for the same reasons discussed above, that factor does not support review here. Rather than providing a "focal point" for review, *id.* at 21, EPA's decision document recounts a complicated balancing of factors peculiarly within the agency's expertise, which courts should *not* review.

Furthermore, while Plaintiffs note that the Ninth Circuit vacated the opinion in which it determined that withdrawal of a proposed rulemaking was reviewable, Opp. at 20 n.4, Plaintiffs fail to mention that the original ruling included a "vigorous dissent," and that the Ninth Circuit court voted *sua sponte* to rehear the case *en banc. Animal Legal Def. Fund v. Veneman*, 490 F.3d 725, 726 (9th Cir. 2007). The plaintiff then sought dismissal for "purely tactical" reasons, including the risk that it would receive an adverse result. *Id.* at 729 (Thomas, Circuit Judge, dissenting). Accordingly, the case law suggests that withdrawal of a discretionary, proposed rulemaking may *not* be reviewable in the Ninth Circuit.

## CONCLUSION

For the reasons stated above and in our Motion, these cases should be dismissed.

---

footing or precedential value. *See, e.g.*, *City and Cty. of San Francisco*, 796 F.3d at 1001-02; *Kerry*, 972 F. Supp. 2d at 1131-35.

Respectfully submitted this 21st day of January, 2020.

/s/ Mark A. Nitczynski
MARK A. NITCZYNSKI
United States Department of Justice - ENRD
Environmental Defense Section
999 18th Street; South Terrace, Suite 370
Denver, CO 80202
Phone: (303) 844-1498; Fax: (303) 844-1350
Email: mark.nitczynski@usdoj.gov

BRIAN UHOLIK
Environment and Natural Resources Division
4 Constitution Square
150 M Street, N.E.
EDS/4th Floor
Washington, D.C. 20002
Phone: (202) 305-0733; Fax: (202) 514-8865
Email: brian.uholik@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2020, I filed foregoing DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b) using the Court's CM/ECF system, which serves copies on counsel of record.


<u>/s/ Mark A. Nitczynski</u>