KEVIN G. CLARKSON
ATTORNEY GENERAL

LAEL A. HARRISON
Assistant Attorney General
Department of Law
123 4th Street, Suite 600
P.O. Box 110300
Juneau, AK 99811-0300
Telephone: (907) 465-3600
Facsimile: (907) 465-2520
Email: lael.harrison@alaska.gov

*Attorney for Intervenor*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BRISTOL BAY ECONOMIC DEVELOPMENT CORPORATION, *et al.,* )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>CHRIS HLADICK; U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.,* )<br>)<br>)<br>)<br>Defendants. )<br>) | Case No. 3:19-cv-00265-SLG |

SALMON STATE, *et al.,*        )
                              )
     Plaintiffs,        )
                              )
v.                            )
                              )
CHRIS HLADICK; U.S.           )
ENVIRONMENTAL PROTECTION      )
AGENCY, *et al.,*             )   Case No.  3:19-cv-00267-SLG
                              )
     Defendants.        )
                              )
TROUT UNLIMITED,              )
                              )
     Plaintiff,         )
                              )
v.                            )
                              )
CHRIS HLADICK; U.S.           )
ENVIRONMENTAL PROTECTION      )
AGENCY, *et al.,*             )
                              )   Case No.  3:19-cv-00268-SLG
     Defendants.        )

## MOTION TO INTERVENE

## I.    INTRODUCTION

     Pursuant to Fed. R. Civ. P. 24, the State of Alaska ("State" or "Alaska") moves to intervene in the above-captioned case as a matter of right, or alternatively, for permissive intervention. The State is entitled to intervene as of right for both merits and remedies purposes to protect itself, its political subdivisions, and its citizens from the socioeconomic impacts which would attend the granting of Plaintiffs' requested relief.

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*    3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE    Page 2 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 2 of 23

In October of 2019, a mix of twenty plaintiffs filed three complaints against the EPA challenging its decision to withdraw an earlier Clean Water Act Section 404(c)[1] proposed "veto" of mining-related activities on State land.[2] Those actions have been consolidated into this case.[3] Dkt. 16. The plaintiffs' concerns stem from the EPA's 2014 Proposed Determination that "development of the Pebble deposit in the headwaters of Bristol Bay, Alaska could result in significant and unacceptable adverse effects on ecologically important" waters and salmon habitat. Dkt. 1 (BBEDC Complaint at ¶ 3). Had the Proposed Determination wound its way through the regulatory process and become final, the EPA Administrator could have prohibited, denied, or restricted the disposal of dredged or fill material into designated areas[4]—a result that plaintiffs clearly seek. *See, e.g.,* Dkt. 1, Trout Unlimited Complaint at pp. 51-52 (Prayer for Relief). Presumably, that would greatly impede, if not outright stop, development of the proposed mine.[5]

---

[1]     The Clean Water Act's ("CWA") Section 404(c) is codified at 33 U.S.C. § 1344(c).

[2]     In its Motion to Dismiss, the EPA provides a detailed description of the statutory and regulatory framework in which Section 404(c) exists. Dkt. 36 at pp. 13-21. The State will not repeat that here.

[3]     The two actions consolidated into this one (originally 3:19-cv-00265-TMB ("BBEDC")) are 3:19-cv-00268-JWS ("Trout Unlimited") and 3:19-cv-00267-SLG ("SalmonState"). Where warranted, the State will refer to an individual complaint by the abbreviation in quotes.

[4]     33 U.S.C.  1344(c); 40 C.F.R. § 231.6.

[5]     *See,* EPA's Motion to Dismiss (filed Dec. 10, 2019), describing Section 404(c) process and effect of determinations. Dkt. 36 at pp. 13-21.

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*     3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                                    Page 3 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 3 of 23

Alaska seeks to intervene in this case because it has direct, unique, and significant interests that would be adversely affected if plaintiffs were to block EPA's decision to withdraw its Proposed Determination. For instance, the State has vital sovereign interests in regulating and managing its lands, mineral resources, waters, environment, fish and wildlife.[6] Alaska also has an interest in the welfare of its citizens, including their economic wellbeing, which is directly related to responsible development of the State's mineral resources.[7] In addition, the State seeks to intervene in order to protect its proprietary rights as the owner of the land.[8] Finally, the State has a direct pecuniary interest in the royalties, mining taxes, and other economic benefits that would flow to it should a mine in the area receive the requisite permits.[9] While the State is not taking a position on whether the proposed mine should or should not receive the required permits, the interests described above clearly qualify it to participate in this case.[10] Should plaintiffs prevail and the Proposed Determination be reinstated, there is significant risk

---

[6]     Alaska Const. art. VIII, esp §§ 8, 11, 12; *see also,* Harrison, Gordon, ALASKA'S CONSTITUTION: A CITIZEN'S GUIDE, 129-145 (Alaska Legislative Affairs Agency, 5th ed. 2012).

[7]     *Id.*; Statehood Act, Section 6(i) ("[A]ll sales, grants, deeds, or patents for any of the mineral lands so granted shall be subject to and contain a reservation to the State of all of the minerals in the lands so sold, granted, deeded, or patented, together with the fight to prospect for, mine, and remove the same . . . [A]ny lands or minerals hereafter disposed of contrary to the provisions of this section shall be forfeited to the United States by appropriate proceedings".).

[8]     *Id.*

[9]     *Id.*

[10]     Fed. R. Civ. P. 24.

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*     3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                    Page 4 of 23

that a mine project would be inappropriately pre-judged before the appropriate state and federal agencies can reach their respective conclusions on the merits of the permit applications.

## II.    BACKGROUND

### A.    Procedural History.

In 2014, the mining company, Pebble Limited Partnership ("PLP"), which was then—and is continuing—to explore the possibility of establishing a gold, copper, and molybdenum mine on State land in the Bristol Bay watershed, challenged in federal court a "Proposed Determination" issued by the EPA under Section 404(c).[11] PLP also sued the EPA in a related case alleging that it violated the Federal Advisory Committee Act ("FACA").[12]

The State of Alaska successfully intervened in that earlier 404(c) case.[13] The Proposed Determination, had it remained in place indefinitely or become final, would have effectively vetoed mining-related activities in and around the "Pebble deposit" located on State land that was then—and continues to be today—open to mining.[14] The

---

[11]    *See, Pebble Ltd. P'ship v. United States Envtl. Prot. Agency*, 155 F. Supp. 3d 1000, 1006-07 (D. Alaska 2014), *aff'd sub nom. Pebble Ltd. P'ship v. U.S. E.P.A.*, 604 F. App'x 623 (9th Cir. 2015) (No. 3:14-cv-00097) ("Section 404(c) case").

[12]    *Pebble Ltd. Partnership v. EPA, et. al*, No. 3:14-cv-00171 (D. Alaska) ("FACA case").

[13]    *See,* Order Granting Motion to Intervene (Jun. 27, 2014), Section 404(c) Case, Dkt. 23.

[14]    *See,* EPA's Motion to Dismiss (filed Dec. 10, 2019), describing Section 404(c) process and effect of determinations. Dkt. 36 at pp. 13-21.

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*    3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                        Page 5 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 5 of 23

Ninth Circuit later affirmed the District Court dismissal of the 404(c) case for lack of

subject matter jurisdiction finding the proposed determination was not final agency action

because it did not consummate the agency's decision-making process, did not impose

permanent legal consequences, and did not yet bar a permit from issuing.[15]

In the FACA case, the federal district court for Alaska enjoined EPA from

continuing its Section 404(c) review.[16] In 2017, PLP and EPA entered into a settlement

agreement that dissolved the injunction and dismissed the case.[17] In the settlement

agreement, EPA agreed both to begin the process of withdrawing its Proposed

Determination and not to advance any re-initiation of a Section 404(c) review to a

Recommended Determination until the earlier of publication of notice of a final

---

[15]     *Pebble Ltd. P'ship v. U.S. E.P.A.*, 604 F. App'x 623, 625 (9th Cir. 2015) ("The plaintiffs also point out that the letter suspended the Corps' ability to issue them a Section 404 discharge permit, but this impairment may be only temporary; after the Section 404(c) review proceeding has concluded, the Corps will be able to issue the plaintiffs a permit again, assuming that EPA has not chosen to veto specification of Bristol Bay as a disposal site. That fact distinguishes this case from *Sackett v. EPA*, where the Court held that an EPA compliance order was final agency action because, among many other things, it imposed a severe and indefinite impairment on the Corps' ability to issue a Section 404 permit for a particular property. See —— U.S. ——, 132 S.Ct. 1367, 1371-72, 182 L.Ed.2d 367 (2012)").

[16]     *See,* Order Granting Motion for Preliminary Injunction (Nov. 25, 2014), enjoining 404(c) process in FACA case, at Dkt. 90.

[17]     *See,* Order Granting Motion to Dissolve Preliminary Injunction and Stipulation of Dismissal (May 12, 2017), dismissing FACA case with prejudice at Dkt. 300.

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*     3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                          Page 6 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 6 of 23

Environmental Impact Statement or May 2021.[18] Pursuant to that plan, EPA proposed to withdraw the Proposed Determination in July 2017.[19]

In December 2017, PLP submitted a CWA Section 404 permit application to the Corps.[20] Then, in late January 2018, EPA issued a notice that it was suspending the proceeding to withdraw the Proposed Determination.[21] EPA subsequently spent 19 months engaged in further review, pursuant both to the 1992 Section 404(q) memorandum that it signed with the Corps and other Section 404 processes.[22] At the conclusion of that period, EPA decided to withdraw its Proposed Determination.[23] PLP's Section 404 permit application remains pending before the United States Army Corps of Engineers, and the required process to determine whether a permit will issue remains incomplete. Plaintiffs brought these consolidated lawsuits to vacate the EPA's August 2019 withdrawal of its Proposed Determination.

---

[18]     84 FR 45749-01, Notification of Decision To Withdraw Proposed Determination To Restrict the Use of an Area as a Disposal Site; Pebble Deposit Area, Southwest Alaska (Aug. 30, 2019).

[19]     *Id. See also,* 82 Fed. Reg. 33,123 (July 19, 2017).

[20]     84 Fed. Reg. at 45,750.

[21]     84 Fed. Reg. at 45,750. *See also,* 83 Fed. Reg. 8,668 (Feb. 28, 2018). The events leading up to the EPA's notice of suspension are set forth in EPA's Motion to Dismiss. Dkt. 36 at pp. 23–24. The State will not repeat those here.

[22]     *See,* EPA's Motion to Dismiss, Dkt. 36 at pp. 24-25.

[23]     84 Fed. Reg. 45,749-01 (Aug. 30, 2019).

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*     3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                                    Page 7 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 7 of 23

### B. Alaska has an interest in the financial impact of mining on lands it owns.

PLP estimates that, if the mine it proposes receives the requisite permits, it will generate between $970 million to $1.32 billion in annual taxes and royalties to the State over its productive life—currently estimated to be 20 years.[24] PLP also expects the project to generate 750 to 1000 direct jobs (a total of 1500 to 2000 jobs) with an average mining wage of at least $100,000 per annum.[25]

Given the geographic breadth of the Proposed Determination and its application to other future projects in the area as well as the potential for precedent regarding the scope of EPA's authority under section 404, the potential financial impact to the State of a decision in this case may go well beyond the potential revenues from the Pebble mine, if it is eventually permitted and operational.

## III. ARGUMENT

### A. The State is entitled to intervene as a matter of right.

Pursuant to Fed. R. Civ. P. 24(a)(2), a court must, upon timely motion, permit intervention as a matter of right by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Courts construe the

---

[24] "Substantial Economic Benefits Locally, Regionally and Statewide," chart available at https://www.northerndynastyminerals.com/site/assets/files/4289/resp-mining-chart.jpg (last accessed Jan. 17, 2020).

[25] *Id.*

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*     3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                              Page 8 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 8 of 23

rule liberally and in favor of potential intervenors.[26] The court's evaluation is guided

primarily by "practical and equitable considerations,"[27] and a court must accept as true

the non-conclusory allegations made in support of an intervention motion.[28]

The Ninth Circuit has adopted a four-part test for intervention as of right:

(1) the motion must be timely; (2) the applicant must claim a "significantly protectable

interest" relating to the property or transaction which is the subject of the action; (3) the

applicant must be so situated that the disposition of the action may, as a practical matter,

impair or impede its ability to protect that interest; and (4) the applicant's interest must

not be adequately represented by the parties to the action.[29] The State meets all four

facets of this test.

//

//

---

[26]     *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1180 (9th Cir. 2011) ("A putative intervenor will generally demonstrate a sufficient interest for intervention of right in a NEPA action, as in all cases, if it will suffer a practical impairment of its interests as a result of the pending litigation." (internal citations omitted)).

[27]     *Id.*, at 1179 (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) which also states at 397-98 that "[a] liberal policy in favor of intervention serves both efficient resolution of issues and broad access to courts"); *see also, Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir.2001).

[28]     *Sw. Ctr. For Biological Diversity*, 268 F.3d at 819 (citing to *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995)).

[29]     *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (citing *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)).

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*     3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                                Page 9 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 9 of 23

### 1.    The State's motion is timely.

Timeliness is dependent on the stage of the proceedings, potential prejudice to the parties, and the reason for any delay.[30] Prejudice to existing parties is the most important timeliness consideration.[31]

The State has moved to intervene at the earliest stage of this case, within four months of the plaintiff filing the complaint and prior to any decision on dispositive motions. This court recently recognized that entities might seek to intervene and accommodated that possibility by noting that briefing schedules for any intervenors would be set after decisions on intervention.[32] EPA and the plaintiffs have briefed a motion to dismiss which is set for oral argument in early March. Dkt. 49. The State does not intend to take a position on that motion to dismiss or participate in that argument. If the State were to bring its own motion to dismiss, it would be on other grounds and the briefing schedule would be set by the court, per its November 18, 2019 order, and would not unduly delay the resolution of the underlying dispute.[33] The plaintiffs have only recently filed their substantive joint brief on the merits, and more than adequate time remains for the State to participate in that briefing.

---

[30]    *State of Alaska v. Suburban Propane Gas Corp.,* 123 F.3d 1317, 1319 (9th Cir. 1997).

[31]    *United States v. Oregon,* 745 F.2d 550, 552 (9th Cir. 1984).

[32]    Scheduling Order (Nov. 18, 2019), 3:19-cv-00265-SLG.

[33]    *Id.* at 2 ("The Court will set the briefing schedule and page limits that will apply to potential intervenors in any order(s) granting motion(s) to intervene.").

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*    3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                              Page 10 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 10 of 23

Importantly, the many permit decisions necessary for PLP to actually begin to build and operate the mine are not yet ripe for the state and federal agencies. Plaintiffs will not lose their opportunity to challenge any of the permits that will need to be issued in the future, including the Corps' Section 404 permit, if the State is permitted to intervene now.

### 2. The State claims a significantly protectable interest in this action.

To intervene as of right, an applicant need not establish standing, or show a particularized injury of the type used to establish standing.[34] No specific legal or equitable interest need be established.[35] An applicant need only demonstrate a "significantly protectable interest."[36]

A proposed intervenor will "generally demonstrate a sufficient interest" if "it will suffer a practical impairment of its interests as a result of the pending litigation."[37] The Ninth Circuit applies this broad interest criterion to involve "as many apparently concerned persons as is compatible with efficiency and due process."[38] It is generally

---

[34] *Didrickson v. United States Dept. of Interior*, 982 F.2d 1332, 1340 (9th Cir 1992).

[35] *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011).

[36] *Id.* (citing *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006); *Sierra Club v. U.S.E.P.A.*, 995 F.2d 1478, 1481, 1484 (9th Cir. 1993) (abrogated by *Wilderness Soc. v. U.S. Forest Service* on grounds that the court could not categorically prohibit intervention-of-right on meritorious NEPA claims)).

[37] *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1180 (9th Cir. 2011) (internal citations omitted).

[38] *County of Fresno v. Andrus,* 622 F.2d 436, 438 (9th Cir. 1980) (internal citations omitted).

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*     3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                                      Page 11 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 11 of 23

enough that the interest asserted is protectable under some law and that there is a relationship between the protected interest and the claims at issue.[39]

As detailed in this motion, the State's interests satisfy the second element of the intervention analysis because it has both a direct economic interest and a regulatory interest in the result of the instant dispute.

a.    **The State has significant economic interests implicated in this case.**

The State has a right to royalties, mineral license taxes, and corporate income taxes on minerals produced from the state-owned land, including the Pebble deposit. The Division of Geological & Geophysical Surveys valued Alaska's mineral industry in 2018 at $2.90 billion. "The total value for 2018 is a composite of the year's expenditures on exploration and development, plus the revenue to the operators from the commodities produced. Exploration and development expenditures continued to rebound from the lows of a few years ago, with increases of 16 and 12 percent, respectively."[40] "Wages for mining-sector jobs, averaging $112,857 in 2018, were some of the highest among major industries in Alaska and were more than twice the average private-sector wage of $54,192 per year."[41] "[I]n 2018 Alaska's mining industry provided 4,500 direct mining

---

[39]    *Sw. Ctr. For Biological Diversity,* 268 F.3d at 818.

[40]    "Alaska's Mineral Industry Stats," DEPARTMENT OF NATURAL RESOURCES GEOLOGICAL & GEOPHYSICAL SURVEYS, https://dggs.alaska.gov/pubs/minerals (last accessed Jan. 16, 2020).

[41]    Special Report 74, ALASKA'S MINERAL INDUSTRY 2018, at 5, http://dggs.alaska.gov/webpubs/dggs/sr/text/sr074.pdf (last accessed Jan. 16, 2020).

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*    3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                           Page 12 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 12 of 23

jobs and an additional 4,700 indirect jobs. Direct and indirect wages totaled an estimated $715 million."[42]

Should EPA's withdrawal of its Section 404(c) Proposed Determination be stopped by plaintiffs, the pending "veto" inherent in the Proposed Determination would immediately chill investment and development opportunities—along with potential state revenues—from the development of valuable resources located on State lands. [43]

> ### b. The State's interests as a sovereign and as a landowner implicate a wide variety of regulatory interests.

The State also has extensive regulatory interests in this dispute that arise from its role as a sovereign tasked with responsibly managing its natural resources and providing for the economic, social, and cultural needs of its citizens; and as a landowner responsible for the conservation, management, and development of its property.

Under the Alaska Statehood Act,[44] as well as the Cook Inlet Exchange later ratified in an amendment to the Alaska Native Claims Settlement Act ("ANCSA"),[45] Congress authorized the State to select lands for its own use. The State gained all right and title to the selected lands, including mineral deposits on those lands. The Statehood Act and legislative history reflect that Congress expected the State to make land

---

[42]    *Id.* at 6.

[43]    *Scotts Valley Bank of Pomo Indians of the Sugar Bowl Rancheria v. U.S.,* 921 F.2d 924, 928 (9th Cir. 1990) ("[a]llowing the City to intervene in this action is the only practical means of protecting its taxing and regulatory interest").

[44]    Pub. L. No. 85-508, 72 Stat. 339 (1958).

[45]    Pub. L. No. 94-204, 89 Stat. 1145 (1976).

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*     3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                    Page 13 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 13 of 23

selections that would serve Alaska's overall economic and social well-being, and recognized that among those lands selected would be lands containing mineral deposits that the State could manage for prospecting and removal activities.[46]

As the Senate Committee on Interior and Insular Affairs stated in its report on the Statehood Act, it "felt obligated to broaden the right of selection so as to give the State at least an opportunity to select lands containing real values, instead of millions of acres of barren tundra. To attain this result, the State is given the right to select lands known or believed to be mineral in character."[47] The Ninth Circuit Court of Appeals has recognized that the land grants Congress made under the Alaska Statehood Act were to allow the State to select land that provided for the State's "overall economic and social well-being," and that these land selections would include mineral deposits.[48]

Under CWA Section 101(b), Congress also recognized the states' lead role in land and water resource management and pollution control:

> It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water

---

[46]     Alaska Statehood Act, Pub. L. No. 85-508, 72 Stat. 339 (1958), Section 6(i).

[47]     S. Rep. No. 1028, 83rd Cong. 2d Sess., at 6 (1954).

[48]     *Udall v. Kalerak*, 396 F.2d 746 (9th Cir. 1968), *cert. denied*, 393 U.S. 1118 (1969). *See also, United States v. Atlantic Richfield Co.* 435 F. Supp. 1009, 1016 (D. Alas. 1977), *aff'd* 612 F.2d 1132 (9th Cir.), *cert. denied*, 449 U.S. 888 (1980) (Congress' intent in Section 6 of the Statehood Act was to provide the State with a solid economic foundation).

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*     3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                    Page 14 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 14 of 23

resources, and to consult with the Administrator in the exercise of his authority under this chapter.[49]

In addition to the foregoing federal laws, the Alaska Constitution imposes a duty on the State to responsibly manage and develop Alaska's natural resources to the maximum use consistent with the public interest and for the maximum benefit of its people.[50] It is "the policy of the state to conserve, improve, and protect its natural resources and environment and control water, land, and air pollution, in order to enhance the health, safety, and welfare of the people of the state and their overall economic and social well-being."[51] It is also "the policy of the state to encourage the settlement of its land and the development of its resources by making them available for maximum use consistent with the public interest."[52]

Likewise, state law mandates that the Department of Natural Resources (DNR) "administer the state program for the conservation and development of natural resources, including…land, water, . . . and minerals."[53] The Department of Environmental Conservation (DEC) is charged with regulating activities that will potentially impact State air, lands, and waters.[54] The Alaska Department of Fish and Game (ADF&G) is

---

[49]     33 U.S.C. §1251(b).

[50]     Alaska Const. Art. VIII, §§ 1 and 2.

[51]     AS 46.03.010(a).

[52]     AS 38.05.910.

[53]     AS 44.37.020(a).

[54]     AS 46.03.020

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*     3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                          Page 15 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 15 of 23

charged with the protection, management, conservation, and restoration of fish and game resources in Alaska, including reviewing proposed activities and structures that may occur in fish-bearing waters.[55]

In addition to a Section 404 dredge-and-fill permit that may be issued by the Corps, numerous additional State, federal, and local government permits and authorizations are required before construction and operation of hardrock mining can begin in Alaska. Notably, the State must certify any Section 404 permit issued by the Corps.

In accordance with CWA Section 401(a) (33 U.S.C. § 1341(a)) and Alaska law (AS 46.03.110 and 18 AAC 15.180),[56] DEC has exclusive responsibility for reviewing and certifying that any proposal by the Corps to grant a Section 404 dredge and fill permit will comply with applicable state requirements, including Alaska water quality standards. As part of the certification process, DEC may impose limitations and monitoring requirements to avoid, mitigate, or identify potential impacts from activities that the Corps might authorize under the Section 404 permit. The requirements that DEC may impose through Section 401 certification become part of the Section 404 permit (33 U.S.C. §1341(d)).

Other permits and authorizations that would be required for a large mine in Alaska on the scale being contemplated by PLP include:

---

[55]    AS 16.05.841 and AS 16.05.871.

[56]    *See also,* AS 46.03.050 ("The department has jurisdiction to prevent and abate the pollution of the waters of the state.").

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*    3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                Page 16 of 23

- Permits developed and issued by DEC under its approved State program (the Alaska Pollutant Discharge Elimination System (APDES) Program AS 46.03.100(h)), required under CWA Section 402 (33 U.S.C. § 1342) for the discharge of pollutants to waters of the United States;

- DNR approval of a proposed plan of operations (11 AAC 86.150, 11 AAC 86.800);

- DNR approval, in coordination with DEC, of mine reclamation plans and financial assurances (such as a reclamation bond) (AS 27.19, *et seq.*);

- a dam safety certification from DNR's Division of Mining Land, and Water's (DMLW's) Dam Safety Unit (AS 46.17 and 11 AAC 93.151-93.201);

- DNR approval of any right-of-way access or utilities on state land (AS 38.05.035);

- a water use authorization or permit from the DMLW's Water Section (AS 46.15);

- DNR approval of the project proponent's proposed cultural resource protection plan for minimizing impacts to cultural and archaeological resources (AS 41.35.080 and 11 AAC 16);

- DEC waste management permits (AS 46.03.100);

- DEC air quality permits (AS 46.14.120); and

- ADF&G Division of Habitat permits for any activity or structure proposed to occur, regardless of land ownership, in fish-bearing waters, such as bridges, culverts, fords, material sites, tailings facilities, and water-withdrawal structures (AS 16.05.841 and AS 16.05.871).

DNR coordinates the permitting responsibilities of all State agencies that may be involved in the authorization of mines in Alaska, and also attempts to coordinate the regulatory involvement of federal and municipal entities to the extent possible. This includes coordinating the State's involvement as a cooperating agency during any

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*     3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE     Page 17 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 17 of 23

environmental reviews that the Corps might conduct under the NEPA[57] and the CWA Section 404(b)(1) guidelines[58] during consideration of a CWA Section 404 dredge-and-fill permit.

The State's environmental and permitting review of a mine project on the scale of Pebble would take several years, review of extensive baseline data, and considerable discussion between the applicant and regulating agencies. Multiple opportunities would be afforded the public to comment on proposed mine activities. As a consequence of this review process, any project initially proposed by an applicant will undoubtedly change, perhaps significantly so, in order to avoid and minimize impacts, or to compensate for unavoidable impacts. The State has a strong interest in participating in and helping to shape that process—something that it would be summarily deprived of if the Proposed Determination is reinstated as a result of this lawsuit.

The State's interest in the resolution of the dispute at the center of these consolidated law suits is extensive and of the greatest significance. The second requirement for intervention is easily met.

  **3. Absent intervention, disposition of this dispute would impair and impede the State's ability to protect its interests.**

The third criterion for intervention as of right is that the action's disposition, as a practical matter, may impair or impede the intervenor's ability to protect its asserted

---

[57] 42 U.S.C. § 4331, *et seq.*

[58] 33 U.S.C. § 1344(b); 40 CFR 230.

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.* 3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE Page 18 of 23

interests.[59] The question of impairment is not separate from the question of existence of an interest.[60] In reviewing this criterion, the courts look to the "'practical consequences' of denying intervention, even where the possibility of future challenge to the regulation remain[s] available."[61]

Granting the plaintiffs' requested relief could have far-reaching consequences in terms of the State's ability to protect its interests. Principles of res judicata, claim preclusion, *stare decisis*, and related doctrines may constrain the State's ability to challenge future federal actions that present issues involving the limits of federal authority.[62] Participating as an intervenor would mitigate that risk by permitting the State to present and litigate issues specific to its interests.

//

//

//

---

[59]    *Wilderness Soc. v. U.S. Forest Serv.,* 630 F.3d at 1177.

[60]    *See, e.g., Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n,* 578 F.2d 1341, 1345 (10th Cir. 1978).

[61]    *Natural Res. Def. Council v. Costle,* 561 F.2d 904, 909 (D.C. Cir. 1977).

[62]    *U.S. ex rel. McGough v. Covington Technologies Co.,* 967 F.2d 1391, 1396 (9th Cir. 1992) ("[T]he government's claims could be impaired if the doctrine of stare decisis were applied."); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (disposition of lawsuit would impair intervenor's ability to protect its interests regardless of whether intervenor could reverse unfavorable ruling by bringing a separate lawsuit; noting that "[t]here is no question that the task of reestablishing the status quo if [plaintiffs] succeed[] in this case will be difficult and burdensome.").

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*    3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                         Page 19 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 19 of 23

### 4. The State's interests are not adequately represented.

The final criterion for intervention asks whether the representation of the State's interests by existing parties "may be" inadequate. The burden to show inadequacy is minimal.[63]

In assessing the adequacy of representation, courts consider: (1) whether the present parties' interests are such that they will undoubtedly make all the intervenor's arguments; (2) whether the present parties are capable of and willing to make those arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.[64] The court's inquiry focuses on the subject of the action, not just the particular issues before the court at the time of the motion.[65] Where an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises.[66]

In seeking intervention, the State requests that the Court deny plaintiffs' effort to prevent EPA from withdrawing its Proposed Determination. Despite seeking similar relief, the EPA does not adequately represent the State's interests.

The State has separate and distinct interests, including: (1) direct economic interests including a right to royalties and taxes from mineral production; (2) ensuring

---

[63]    *Sw. Ctr. For Biological Diversity,* 268 F.3d at 823.

[64]    *Id.*, at 822.

[65]    *Id.*, at 823

[66]    *Id.*

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*    3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                                Page 20 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 20 of 23

that its environment is protected and its environmental laws complied with; and (3) managing its resources, including the porphyry copper, gold, and molybdenum mineral deposit and the habitat for fish and wildlife to protect the State's significant natural resource interests in the region.[67]

The Alaska Constitution and statutes impose a duty on the State to protect the interests of its citizens in a number of respects, including managing and conserving wildlife, promoting the use of natural resources, and ensuring that the environment is protected.[68] These are non-delegable duties. The EPA's duties relate to federal mandates, not those obligating the State.[69] Importantly, EPA has an interest in protecting its notion of the extent of its authority in the 404(c) permitting process that may conflict with the State's views on that question. Indeed, in the earlier litigation, the State and EPA were opposed on the question of the EPA's ability to issue a Proposed Determination that would "veto" the mine.

---

[67]    Alaska Const. Art. VIII, §§ 1, 2 & 4; AS 16.05.020.

[68]    Alaska Const. Art. VIII, §§ 1, 2 & 4; AS 16.05.020, AS 38.05.180(a)(1)(A) and (C), and AS 46.03.110.

[69]    *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 20 (D.D.C. 2010) (Regarding adequate representation of interests, the court held ("The mere fact that other defendants might hypothetically take Wyoming's interests into account when shaping their arguments does not mean that they would afford the same primacy to Wyoming's interests in, for instance, maintaining its unique role in regulating coal mining operations and environmental quality or its financial and social economic interests in the development of coal mining operations within its borders.")).

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*    3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                         Page 21 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 21 of 23

The possibility that the interests of the State and EPA may diverge "need not be great" to satisfy the minimal burden of showing that representation "may" be inadequate.[70] That standard is easily met here.

### B.     The State should be granted permissive intervention.

Alternatively, if this Court finds that the State is not entitled to intervention as a matter of right, the State requests permissive intervention under Fed. R. Civ. P. 24(b)(2). Upon timely filing of a motion, a court may permit a party to intervene who "has a claim or defense that shares with the main action a common question of law or fact" after considering whether "intervention will unduly delay or prejudice the adjudication of the rights of the original parties."[71] The Ninth Circuit applies a three-prong test to determine if permissive intervention is appropriate: "(1) the movant must show an independent ground for jurisdiction; (2) the motion must be timely; and (3) the movant's claim or defense and the main action must have a question of law and fact in common."[72]

First, if this Court determines the EPA's withdrawal is a final agency action, then this Court has jurisdiction to hear this case as a federal question and under the Administrative Procedure Act. 28 U.S.C. § 1331; 5 U.S.C. §§ 701 *et. seq.* Second, Alaska's motion is timely for the reasons presented above. Third, Alaska satisfies the commonality requirement because the State seeks to defend the withdrawal of the EPA's

---

[70]     *Utahns For Better Transportation v. U.S.,* 295 F.3d. 1111, 1117 (10th Cir. 2002).

[71]     Fed. R. Civ. P. 24 (b)(1)(B), (b)(3).

[72]     *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989) *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82, 110 S. Ct. 1679, 109 L. Ed. 2d 74 (1990) (citations omitted).

*Bristol Bay Economic Dev. Corp. v. Hladick, et al.*     3:19-cv-00265-SLG (Consolidated)
STATE OF ALASKA'S MOTION TO INTERVENE                                    Page 22 of 23
Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 22 of 23

Proposed Determination—which is the central issue raised in plaintiffs' consolidated complaints. Clearly, the State's interests share common questions of law and fact with the questions being litigated in this case.

Further, the State submits that its participation in this case will "contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented"[73] because of its central role as the owner of the land on which the proposed mine would be developed and as the governmental entity entitled to regulate and manage that land and the surrounding natural resources.

## IV. CONCLUSION

For the reasons set forth above, this Court should grant the State's Motion to Intervene as of right under Fed. R. Civ. P. 24(a), or alternatively, permit the State to intervene under Fed. R. Civ. P. 24(b)(2).

DATED: February 7, 2020.

KEVIN G. CLARKSON
ATTORNEY GENERAL

By:     /s/ Lael A. Harrison
         Lael A. Harrison
         Alaska Bar No. 0811093

---

[73]     *U.S. Postal Service v. Brennan,* 579 F.2d 188, 192 (9th Cir. 1978).

Case 3:19-cv-00265-SLG   Document 51   Filed 02/07/20   Page 23 of 23