# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

BRISTOL BAY ECONOMIC
DEVELOPMENT CORPORATION,
*et al.*,

            Plaintiffs,

     v.

CHRIS HLADICK,
U.S. ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

           Defendants,

     v.

STATE OF ALASKA,

        Defendant-intervenor.

**Case No. 3:19-cv-00265-SLG**

(Consolidated)

---

SALMONSTATE, *et al.*,

           Plaintiffs,

     v.

CHRIS HLADICK,
U.S. ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

           Defendants.

Case No. 3:19-cv-00267-SLG

TROUT UNLIMITED,

                Plaintiff,

        v.

U.S. ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

                Defendants.

Case No. 3:19-cv-00268-SLG

## <u>ORDER RE MOTION TO DISMISS</u>

In 2014, the Environmental Protection Agency ("EPA") proposed action under the Clean Water Act ("CWA") that would prohibit the U.S. Army Corps of Engineers ("Corps") from issuing a permit to allow development of the Pebble Mine. As a result of litigation, EPA in 2017 sought public input on whether to suspend the process it had begun. In 2018, the agency decided to leave its proposed action in place. But EPA later reversed itself, withdrawing its proposed action on August 30, 2019. These lawsuits followed, challenging EPA's August 2019 decision.[1]

Before the Court at Docket 36 is Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b). Plaintiffs' Joint Opposition is at Docket 38. Oral argument

---

[1] These three cases were consolidated by order of the Court on October 23, 2019. Docket 16. Pursuant to the Scheduling Order at Docket 27, Plaintiffs filed their opposition jointly. The Court granted the State of Alaska's motion to intervene on February 21, 2020. Docket 56.

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 2 of 36

on the motion was held on March 2, 2020.[2]  For the reasons set forth below, the

motion to dismiss is granted.[3]

## BACKGROUND

### I.    Statutory Framework

The Clean Water Act ("CWA") provides that "the discharge of any pollutant

by any person shall be unlawful" unless it is in compliance with the Act's

provisions.[4]  One such provision is CWA § 404, which authorizes the Corps to

issue permits for "dredged or fill material into the navigable waters [of the United

States] at specified disposal sites."[5]  The CWA gives EPA the ability to exercise

an oversight authority over this process; the Corps' permitting authority is made

subject to § 404(c), which provides, in full:

> The Administrator [of EPA] is authorized to prohibit the specification
> (including the withdrawal of specification) of any defined area as a
> disposal site, and he is authorized to deny or restrict the use of any
> defined area for specification (including the withdrawal of
> specification) as a disposal site, whenever he determines, after notice
> and opportunity for public hearings, that the discharge of such

---

[2] *See* Docket 63 (Transcript of March 2, 2020 oral argument).

[3] Due to the coronavirus pandemic, by Miscellaneous General Order 20-11, the District of Alaska imposed a stay on all civil matters for 30 days, effective March 30, 2020.  As the presiding judge in this matter, the undersigned judge vacates the stay in this case to enter this order, allow entry of final judgment, and the filing of any post-judgment motions.  *See* MGO-20-11 at 6–7.  However, the parties may move or stipulate to extend any filing deadlines.

[4] 33 U.S.C. § 1311(a).

[5] 33 U.S.C. § 1344(a); *see* 40 C.F.R. § 232.2 (defining "dredged material" and "fill material").

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 3 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 3 of 36

materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas (including spawning and breeding areas), wildlife, or recreational areas.[6]

In short, while the CWA vests the Corps with permitting authority for the discharge of dredged and fill material, § 404(c) gives EPA the power to veto individual permits.[7]

EPA regulations govern the agency's implementation of § 404(c). Under these regulations, "[i]f the Regional Administrator has reason to believe after evaluating the information available to him . . . that an 'unacceptable adverse effect' could result from the specification or use for specification of a defined area for the disposal of dredged or fill material, he may initiate" the § 404(c) process.[8] If the Regional Administrator elects to initiate the process, the regulations set out the procedural steps to be followed. First, the Regional Administrator must notify the Corps, the owner of the disposal site, and the permit applicant of his intent "to issue a public notice of a proposed determination to prohibit or withdraw" the

---

[6] 33 U.S.C. § 1344(c); *see* 33 U.S.C. § 1344(b) (subjecting Corps' permitting authority "to subsection (c) of this section").

[7] EPA can exercise this veto both before and after the Corps has made a permitting decision. *See Mingo Logan Coal Co. v. U.S. Envtl. Prot. Agency*, 714 F.3d 608, 613 (D.C. Cir. 2013) ("[T]he unambiguous language of subsection 404(c) manifests the Congress's intent to confer on EPA a broad veto power extending beyond the permit issuance.").

[8] 40 C.F.R. § 231.3(a). EPA regulations define an "unacceptable adverse effect" as an "impact on an aquatic or wetland ecosystem which is likely to result in significant degradation of municipal water supplies . . . or significant loss of or damage to fisheries, shellfishing, or wildlife habitat or recreation areas." 40 C.F.R. § 231.2(e).

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 4 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 4 of 36

dredged or fill material permit.[9]  If within 15 days of this notice, "it has not been demonstrated to the satisfaction of the Regional Administrator that no unacceptable adverse effect(s) will occur" or the Corps does not give notice that it will take "corrective action" to address the Regional Administrator's concerns, "the Regional Administrator shall publish a notice of a proposed determination."[10]  Once this process is initiated, "the [Corps] . . . shall not issue [a] permit" until EPA takes final action under § 404(c).[11]

After providing for public notice and comment, the Regional Administrator must either withdraw the proposed determination or make a recommended determination to prohibit the discharge "because [it] . . . would be likely to have an unacceptable adverse effect."[12]  Before a proposed determination may be withdrawn, the Administrator must be given an opportunity to review the decision.[13] If the Administrator decides not to exercise review, the Regional Administrator

---

[9] 40 C.F.R. § 231.3(a)(1).

[10] 40 C.F.R. § 231.3(a)(2).

[11] *Id.*

[12] 40 C.F.R. § 231.5(a); *see also* 40 C.F.R. §§ 231.3(b)–(d), 231.4 (describing notice and comment procedures).

[13] 40 C.F.R. § 231.5(c).  Any person who commented on the proposed determination must also be given an opportunity to submit "recommendations concerning review."  *Id.*

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 5 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 5 of 36

must give public notice of the withdrawal of the proposed determination.[14] The regulations state that "[s]uch notice shall constitute final agency action."[15]

If the Regional Administrator instead makes a recommended determination, he must send it, along with the administrative record, to the EPA Administrator "for review."[16] The EPA Administrator must then "make a final determination affirming, modifying, or rescinding the recommended determination."[17] The regulations require the final determination to include findings and "stat[ed] reasons," and to be published in the Federal Register.[18]

Section 404(c) vetoes are rare. According to EPA, the agency "has used its section 404(c) authority judiciously and sparingly, having completed only 13 section 404(c) actions in the 42-year history of the CWA."[19]

---

[14] 40 C.F.R. § 231.5(c)(1).

[15] *Id.*

[16] 40 C.F.R. § 231.5(b).

[17] 40 C.F.R. § 231.6. A similar process occurs when the EPA administrator decides to review the withdrawal of a proposed determination. *See* 40 C.F.R. § 231.5(c)(2).

[18] 40 C.F.R. § 231.6. The regulation also defines this determination to be "final agency action under section 404(c) of the Act." *Id.*

[19] Proposed Determination to Restrict the Use of an Area as a Disposal Site, 79 Fed. Reg. 42,314, 42,317 (July 21, 2014) [hereinafter "Proposed Determination"]; *see also Coeur Alaska, Inc. v. Se. Alaska Conservation Council*, 557 U.S. 261, 303 n.5 (2009) (Ginsburg, J., dissenting) (noting that EPA has "exercised [its § 404(c) authority] only a dozen times over 36 years encompassing more than 1 million permit applications").

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 6 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 6 of 36

## II. Factual Background

In 2011, Northern Dynasty Minerals, which owns Pebble Limited Partnership ("PLP"), notified the Securities and Exchange Commission of its "intention to develop a large-scale mine at the Pebble Deposit," located in the Bristol Bay watershed in Southwest Alaska.[20]

That same year, EPA "initiated an assessment to determine the significance of the Bristol Bay watershed's ecological resources and evaluate the potential impacts of large-scale mining on these resources."[21] EPA used the information submitted by PLP "to develop its mining scenarios" for the watershed assessment, which it finalized in January 2014.[22]

On July 21, 2014, EPA Region 10[23] published a Notice of Proposed Determination to restrict the use of certain waters in the larger Bristol Bay watershed "as disposal sites for dredged or fill material associated with mining the

---

[20] Notification of Decision to Withdraw Proposed Determination to Restrict the Use of an Area as a Disposal Site, 84 Fed. Reg. 45,749, 45,749 (Aug. 30, 2019) [hereinafter "Withdrawal Decision"]. "The Pebble deposit is a large, low-grade, porphyry copper deposit (containing copper-, gold-, and molybdenum-bearing minerals) that underlies portions of the South Fork Koktuli River . . . , North Fork Koktuli River . . . , and Upper Talarik Creek . . . watersheds." Proposed Determination, 79 Fed. Reg. at 42,315.

[21] Withdrawal Decision, 84 Fed. Reg. at 45,749.

[22] *Id.*

[23] "EPA Region 10 is based in Seattle, and has responsibility for EPA matters in Alaska, Washington, Oregon, and Idaho." Docket 36 at 16 n.1.

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 7 of 36

Pebble deposit" under CWA § 404(c).[24]  The Proposed Determination explained that the "Bristol Bay watershed is an area of unparalleled ecological value, boasting salmon diversity and productivity unrivaled anywhere in North America."[25] It catalogued the wealth of salmon that spawn in Bristol Bay, noting that their abundance and the sustainability of the resulting fishery were in large part due to "the fact that its aquatic habitats are untouched and pristine."[26]  EPA Region 10 stated that the discharge of dredged and fill material associated with mining the Pebble deposit would "pose significant risks to the unparalleled ecosystem that produces one of the greatest wild salmon fisheries left in the world."[27]  Region 10 therefore concluded that "[a]fter evaluating available information, [it] has reason to believe that unacceptable adverse effects on fishery areas . . . could result from the discharge of dredge or fill material associated with mining the Pebble deposit."[28]

---

[24] Withdrawal Decision at 45,749–50; *see also* Proposed Determination, 79 Fed. Reg. 42,314.

[25] Proposed Determination, 79 Fed. Reg. at 42,315.

[26] *Id.*

[27] *Id.* at 42,316.  EPA explained that "[i]n simple terms, the infrastructure necessary to mine the Pebble deposit jeopardizes the long-term health and sustainability of the Bristol Bay ecosystem."  *Id.*

[28] *Id.* at 42,318.

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 8 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 8 of 36

After the issuance of the Proposed Determination, PLP sued EPA claiming, among other things, that the agency had violated the Federal Advisory Committee Act.[29]  On November 25, 2014, PLP obtained a preliminary injunction that prohibited EPA from moving forward with the § 404(c) process during the pendency of the litigation.[30]

On May 11, 2017, EPA and PLP settled several lawsuits related to the Pebble deposit.[31]  The district court accordingly vacated the injunction and dismissed PLP's cases against EPA.[32]  As a part of the settlement,  EPA agreed not to proceed with the § 404(c) process until May 11, 2021, or until the Corps issued a final environmental impact statement ("EIS") evaluating PLP's permit application, whichever came sooner.[33]  The agency also agreed to "initiate a process to propose to withdraw the Proposed Determination."[34]

Pursuant to the settlement agreement, EPA Region 10 issued a Proposal to Withdraw the Proposed Determination on July 19, 2017.[35]  In the proposal, EPA

---

[29] Withdrawal Decision, 84 Fed. Reg at 45,750.

[30] *Pebble Ltd. P'ship v. Envtl. Prot. Agency*, No. 3:14-cv-00171-HRH (D. Alaska Nov. 25, 2014) at Docket 90 (Order Granting Preliminary Injunction); *see also* Withdrawal Decision, 84 Fed. Reg. at 45,750.

[31] Withdrawal Decision, 84 Fed. Reg. at 45,750.

[32] *Id.*

[33] *Id.*

[34] *Id.* (quoting May 11, 2017 settlement agreement).

[35] *Id.*; *see also* Proposal to Withdraw Proposed Determination to Restrict the Use of an

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 9 of 36

sought public comment on three rationales for withdrawing of the Proposed Determination: (1) to "[p]rovide PLP with additional time to submit a CWA Section 404 permit application to the Corps"; (2) to "[r]emove any uncertainty, real or perceived, about PLP's ability to submit a permit application and have that permit application reviewed"; and (3) to "[a]llow the factual record regarding any forthcoming permit application to develop."[36] The agency received over one million public comments on the Proposal to Withdraw and held two public hearings.[37]

On December 22, 2017, before EPA had reached a decision regarding the withdrawal of the Proposed Determination, PLP applied to the Corps for a § 404 permit to develop a mine at the Pebble deposit.[38] On March 1, 2018, EPA became a "cooperating agency for development of the EIS for the Pebble project."[39] The Corps released a draft EIS ("DEIS") for the permit application on February 20, 2019.[40]

---

Area as a Disposal Site, 82 Fed. Reg. 33,123 (July 19, 2017) [hereinafter "Proposal to Withdraw"].

[36] Withdrawal Decision, 84 Fed. Reg. at 45,750; *see also* Proposal to Withdraw, 82 Fed. Reg. at 33,124.

[37] Withdrawal Decision, 84 Fed. Reg. at 45,750.

[38] *Id.*

[39] *Id.*

[40] *Id.* EPA actively participated in the public comment period, submitting "over 100 pages of comments to the Corps on the Draft EIS and over 50 pages of comments on the 404 [Public Notice]." *Id.*

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 10 of 36

On February 28, 2018, EPA Region 10 published its Decision not to Withdraw the Proposed Determination.[41] The agency explained that it "ha[d] decided not to withdraw the 2014 Proposed Determination at this time," and that it was "suspend[ing] the proceeding to withdraw the Proposed Determination and leav[ing] that Determination in place pending consideration of any other information that is relevant to the protection of the world-class fisheries contained in the Bristol Bay watershed in light of the permit application that has now been submitted to the Corps."[42] EPA noted that two of the rationales for withdrawal on which it had sought comment—to resolve uncertainty about PLP's ability to submit an application and to provide the company additional time to do so—were no longer relevant in light of PLP's permit application to the Corps.[43] Regarding the third rationale—allowing the factual record to develop—the agency "conclude[d] that the factual record regarding the permit application can develop notwithstanding the Proposed Determination" because EPA had discretion to

---

[41] *Id.*; *see also* Notification of Decision not to Withdraw Proposed Determination, 83 Fed. Reg. 8,668 (Feb. 28, 2018) [hereinafter "Decision not to Withdraw"].

[42] Decision not to Withdraw, 83 Fed. Reg. at 8,670. EPA noted its "inten[t] at a future time to solicit public comment on what further steps, if any, the Agency should take in the section 404(c) process." *Id.* at 8,671.

[43] *Id.* at 8,670.

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 11 of 36

Case 3:19-cv-00265-SLG    Document 75    Filed 04/17/20    Page 11 of 36

consider any record developments before proceeding to the next step of the § 404(c) process.[44]

On June 26, 2019, EPA's General Counsel directed EPA Region 10 to revisit its decision not to withdraw the Proposed Determination.[45] The General Counsel explained that "the suspension notice had created confusion" and "that by 'making a decision one way or the other, the Region will provide much-needed clarity and transparency to the public on this issue.'"[46]

On August 30, 2019, EPA Region 10 published a notice of its Decision to Withdraw the Proposed Determination.[47] Region 10 recounted the long history of the Proposed Determination and the developments that had occurred since its issuance in 2014.[48] The Region explained:

> EPA has carefully considered the positions articulated in 2014 Proposed Determination and the 2017 and 2018 notices in light of the developments since they were published. First, the Corps' DEIS includes significant project-specific information that was not accounted for in the 2014 Proposed Determination and, based on that information, the Corps has reached preliminary conclusions that in

---

[44] *Id.*

[45] Withdrawal Decision, 84 Fed. Reg. at 45,750. EPA's General Counsel "act[ed] by delegated authority for the Administrator," who had recused himself from this matter. *Id.*

[46] *Id.* (quoting General Counsel's memorandum).

[47] *See generally id.* EPA Region 10 explained that additional notice and comment was "not required under EPA's regulations" and that it had "provided numerous opportunities for the public to comment on . . . the rationale for EPA's decision to withdraw the Proposed Determination." *Id.* at 45,756.

[48] *Id.* at 45,749–50.

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 12 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 12 of 36

certain respects conflict with preliminary conclusions in EPA's 2014 Proposed Determination. Second, there are other processes available now, including the 404(q) MOA process, for EPA to resolve any issues with the Corps as the record develops. EPA believes these processes should be exhausted prior to EPA deciding, based upon all information that has and will be further developed, to use its section 404(c) authority. The issues relating to the development of the record align with EPA's original, July 2017 rationale for withdrawing the 2014 Proposed Determination. For these reasons, Region 10 has now concluded that it is more appropriate to use well-established mechanisms to raise project-specific issues as the record develops during the permitting process and consider the full record before potential future decision-making on this matter, instead of maintaining a section 404(c) process that is now five years old and does not account for the voluminous information provided in the permitting process.[49]

EPA Region 10 further explained that it was "not basing its decision-making on technical consideration or judgments about whether the mine proposal . . . results in 'unacceptable adverse effects' under CWA section 404(c)."[50]

Several groups challenged the Withdrawal Decision under the Administrative Procedure Act ("APA"), seeking declaratory relief, injunctive relief, and vacatur of the Withdrawal Decision.[51] The three resulting lawsuits were consolidated into this

---

[49] *Id.* at 45,752–53. Pursuant to CWA § 404(q), EPA and the Corps have signed a memorandum of agreement that establishes procedures relevant to § 404 permits and the § 404(c) process. *See* 33 U.S.C § 1344(q) (requiring EPA to enter into such agreements to "minimize . . . duplication, needless paperwork, and delays in the issuance of permits under this section").

[50] Withdrawal Decision, 84 Fed. Reg. at 45,756.

[51] Docket 1 at 34–38, ¶¶ 115–35; Case No. 3:19-cv-00267-SLG Docket 1 at 41–44, ¶¶ 114–24; Case No. 3:19-cv-268-SLG Docket 1 at 47–51, ¶¶ 129–52.

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 13 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 13 of 36

action on October 23, 2019.[52]  On December 10, 2019, EPA filed the instant motion to dismiss.[53]

## JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.[54]

## LEGAL STANDARD

EPA moves for dismissal under Federal Rule of Civil Procedure 12(b).[55]  The agency does not specify the subsection of Rule 12(b) under which it moves for dismissal, but provides in its briefing the standards of review for both 12(b)(1)—lack of subject-matter jurisdiction—and 12(b)(6)—failure to state a claim upon which relief can be granted.[56]

Due to the broad grant of power conferred to the courts by 28 U.S.C. § 1331, "jurisdictional dismissals in actions premised on federal questions are 'exceptional.'"[57]  They are only warranted "where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely

---

[52] Docket 16 (Order re Motions to Consolidate).

[53] Docket 36.

[54] *See Califano v. Sanders*, 430 U.S. 99, 105 (1977) (explaining that 28 U.S.C. § 1331 "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate").

[55] Docket 36 at 2.

[56] Docket 36 at 30.

[57] *Leeson v. Transam. Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 14 of 36

for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous."[58]  In contrast, dismissal of a complaint for failure to state a claim is appropriate "if a cognizable legal theory is absent or if the facts alleged fail to suffice under a cognizable claim."[59]  The practical effect of dismissal under each of these rules may be the same, but they are legally distinct; "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case."[60]

## DISCUSSION

The Administrative Procedure Act ("APA") "embodies a 'basic presumption of judicial review,' and instructs reviewing courts to set aside agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"[61]  Section 701(a) of the APA, however, carves out two exceptions from this

---

[58] *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)).

[59] *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 487 (9th Cir. 2019) (emphasis omitted) (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017)).

[60] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998); *see also United States v. Park Place Assoc., Ltd.*, 563 F.3d 907, 923–24 (9th Cir. 2009) (discussing difference between sovereign immunity and subject matter jurisdiction); *cf. Allen v. Milas*, 896 F.3d 1094, 1101 (9th Cir. 2018) (explaining that because "'[j]urisdiction' refers to 'a court's adjudicatory authority,' the term 'properly applies only to 'prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction)' implicating [the court's adjudicatory authority.'" (alterations in original) (quoting *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160–61 (2010))).

[61] *Dep't of Commerce v. New York*, __ U.S. __, 139 S. Ct. 2551, 2568 (2019) (first quoting

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 15 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 15 of 36

general rule of reviewability; relevant here, § 701(a)(2) forecloses review when "agency action is committed to agency discretion by law."[62]  EPA contends that § 701(a)(2) prohibits judicial review of the decision to withdraw a proposed § 404(c) determination, and that dismissal of this consolidated action is therefore warranted.[63]

Application of § 701(a)(2) "requires careful examination of the statute on which the claim of agency illegality is based."[64]  The Supreme Court recently explained:

> In order to give effect to the command that courts set aside agency action that is an abuse of discretion, and to honor the presumption of judicial review, we have read the § 701(a)(2) exception for action committed to agency discretion "quite narrowly, restricting it to 'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'"[65]

---

*Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967); then quoting 5 U.S.C. § 706(2)(A)); *cf. Guerrero-Lasprilla v. Barr*, 589 U.S. __, No. 18-776, slip op. at 6 (2020) (underscoring "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action" (quoting *Kucana v. Holder*, 558 U.S. 233, 251 (2010)).

[62] 5 U.S.C. § 701(a)(2); *see also Dep't of Commerce v. New York*, 139 S. Ct. at 2568 ("Review [under the APA] is not available, however, 'to the extent that' . . . the agency action is 'committed to agency discretion by law.'" (first quoting 5 U.S.C. § 701(a)(1); then quoting U.S.C. § 701(a)(2)).

[63] *See* Docket 36 at 31–35.

[64] *Webster v. Doe*, 486 U.S. 592, 600 (1988).

[65] *Dep't of Commerce v. New York*, 139 S. Ct. at 2568 (quoting *Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 586 U.S. __, 139 S. Ct. 361, 370 (2018)).

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 16 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 16 of 36

The Supreme Court has "generally limited the exception to 'certain categories of administrative decisions that courts traditionally have regarded as "committed to agency discretion."'"[66]  These include "a decision not to institute enforcement proceedings."[67]

In the seminal case of *Heckler v. Chaney*, the Supreme Court held that the Federal Drug Administration's decision not to use its enforcement powers under the Food, Drug, and Cosmetic Act to prohibit the use of certain drugs for lethal injection was unreviewable under the APA.[68]  The Court concluded that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)."[69]  The Supreme Court set forth several rationales for its decision:

> (1) "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise," such as allocation of resources and agency policies and priorities; (2) an agency is better equipped to make that balancing than a court; (3) an agency's refusal to enforce does not implicate personal liberty or property rights, which courts are often called on to protect; and (4) an agency's decision not to enforce is analogous to

---

[66] *Id.* (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)).

[67] *Id.* (first citing *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985); then citing *Webster*, 486 U.S. at 600–01).

[68] 470 U.S. at 828–37.

[69] *Id.* at 832; *see also City & Cty. of S.F. v. U.S. Dep't of Transp.*, 796 F.3d 993, 1001 (9th Cir. 2015) ("*Heckler* carved out a presumption of unreviewability of an agency's decision not to take enforcement action.").

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 17 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 17 of 36

prosecutorial discretion, an arena in which courts have traditionally not interfered.[70]

The Supreme Court was careful to note, however, that this presumption is not absolute; it "may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers."[71]

EPA argues that the exercise of its § 404(c) authority is akin to an enforcement action and that the Withdrawal Decision is therefore presumptively unreviewable.[72] Plaintiffs disagree; they maintain that a § 404(c) veto is a regulatory action, rather than an enforcement action.[73] Plaintiffs focus on the statute's procedural requirements, which mandate a notice and comment period and the development of an administrative record before a final determination may be issued.[74] Plaintiffs also argue that "unlike enforcement decisions," a § 404(c) veto "ha[s] only future effect."[75] They maintain that EPA's decisions under § 404(c)

---

[70] *City & Cty. of S.F.*, 796 F.3d at 1001–02 (quoting *Heckler*, 470 U.S. at 832–33).

[71] *Heckler*, 470 U.S. at 832–33.

[72] Docket 36 at 35–36; Docket 42 at 9–11.

[73] Docket 38 at 31–38.

[74] Docket 38 at 31–33 (citing *Massachusetts v. U.S. Envtl. Prot. Agency*, 549 U.S. 497, 527 (2007) and *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 632 F. App'x 905, 907–08 (9th Cir. 2015)); *see* 33 U.S.C. § 1344(c) (requiring EPA to provide "notice and opportunity for public hearings" and to "set forth in writing and make public [its] findings and [its] reasons for making any determination" of an unacceptable adverse effect).

[75] Docket 38 at 33–34 (quoting *Animal Legal Def. Fund*, 632 F. App'x at 907).

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 18 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 18 of 36

therefore have "the hallmarks of reviewable regulatory authority rather than an ad hoc enforcement decision."[76]

Plaintiffs primarily cite *Massachusetts v. U.S. Environmental Protection Agency* to support this portion of their argument.[77] The Supreme Court in that case reviewed EPA's denial of a petition for rulemaking under the Clean Air Act.[78] The Court never questioned whether the denial was reviewable—in fact, it noted that "the affected party had an undoubted procedural right to file in the first instance"— but rather discussed the appropriate standard of review.[79] Unlike the Clean Air Act provision at issue in that case, § 404(c) establishes no procedural right through which private parties can spur the agency into action.[80] Plaintiffs further argue that the Withdrawal Decision should be reviewed as if it were the withdrawal of a proposed rulemaking, but acknowledge that "[t]he Ninth Circuit does not have precedential authority holding that courts may review an agency's decision to withdraw a voluntarily proposed rule."[81]

---

[76] Docket 38 at 35; *see also* Docket 63 at 30:7–32:2 (Oral Argument Transcript).

[77] Docket 38 at 31–34.

[78] 549 U.S. 497, 527 (2007).

[79] *Id*.

[80] *Compare* 42 U.S.C. § 7607(b)(1) (establishing reviewability of denials of Clean Air Act petitions for rulemaking) *with* 33 U.S.C. § 1344(c).  *See also Mass. v. EPA*, 549 U.S. at 528 ("[T]he Clean Air Act expressly permits review of [the denial of a petition for rulemaking]." (citing 42 U.S.C. § 7607(b)(1)).

[81] Docket 38 at 33 n.4.  Plaintiffs instead cite to several District of Columbia Circuit cases, which are not binding on the courts of this Circuit.  Docket 38 at 33–34 (citing *Int'l Union*,

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 19 of 36

Although § 404(c) requires the development of an administrative record upon which EPA must base its ultimate veto decision, several elements of the statute compel the Court's conclusion that it is more closely analogous to an enforcement action than a regulatory proceeding. To begin with, the definitions provided by the APA itself would categorize a § 404(c) veto as a "sanction," rather than a "rule." The APA defines a "rule" to be "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy."[82] A "sanction" on the other hand, is defined to include the "requirement, revocation, or suspension of a license."[83] "License" is in turn defined to include "an agency permit."[84] While a § 404(c) veto can be forward-looking, it has the practical effect of denying or suspending a dredge-and-fill permit.[85] It prohibits or

_United Mine Workers of Am. v. U.S. Dep't of Labor_, 358 F.3d 40, 43–44 (D.C. Cir. 2004); _Williams Nat. Gas Co. v. FERC_, 872 F.2d 438, 443 (D.C. Cir. 1989); _Envtl. Integrity Project v. McCarthy_, 139 F. Supp. 3d 25, 38–39 (D.D.C. 2015)).

[82] 5 U.S.C. § 551(4); _see also Perez v. Mortg. Bankers Ass'n_, 575 U.S. 92, 95–96 (2015) ("'Rule' . . . is defined broadly to include 'statement[s] of general or particular applicability and future effect' that are designed to 'implement, interpret, or prescribe law or policy.'" (alteration in original) (quoting 5 U.S.C. § 551(4)).

[83] 5 U.S.C. § 551(10)(F).

[84] 5 U.S.C. § 551(8).

[85] The Court disagrees with Plaintiffs' assertion that § 404(c) vetoes only have future effect. _See_ Docket 38 at 33–34. The language of § 404(c) and its implementing regulations make it clear that EPA can act to restrict ongoing discharges as well as to prevent those that have not yet begun. _See_ 33 U.S.C. § 1344(c) (authorizing EPA to act "whenever" it makes the requisite determination); 40 C.F.R. § 231.2(c) ("Deny or restrict the use of any defined area for specification is to deny or restrict the use of any area for the _present or future_ discharge of any dredged or fill material." (emphasis added)). But § 404(c) vetoes would not constitute "rules" under the APA even if they did only prevent

Case No. 3:19-cv-00265-SLG (consol.), _Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al._
Order re Motion to Dismiss
Page 20 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 20 of 36

restricts action by an individual permit holder; although this restriction may implement the agency's policy, it falls within the definition of "sanction" by the APA.[86]

Moreover, inaction under § 404(c) shares several of the characteristics of non-enforcement that the Supreme Court identified in *Heckler* as warranting the presumption of unreviewability in *Heckler*.[87]  First, as discussed above, and as EPA argues, the § 404(c) vetoes "effectively enjoin discharges."[88]  By not acting under that section, therefore, EPA "does not exercise its coercive power" over an individual permit holder or applicant.[89]

Another rationale underlying the presumption of unreviewability that the Supreme Court identified in *Heckler* was that decisions not to take enforcement

---

future discharges.  The Act separately defines an "order" to be "a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing."  5 U.S.C. § 551(6).  Thus, the injunctive denial of a permit would constitute an order, not a rule.  *See S.F. Herring Ass'n v. U.S. Dep't of Interior*, 946 F.3d 564, 576 (9th Cir. 2019) (categorizing Park Service announcement that commercial herring fishing was prohibited in Golden Gate National Recreation Area as both order and sanction under 5 U.S.C. § 551).

[86] *See S.F. Herring Ass'n*, 946 F.3d at 577 ("[T]he Association is not challenging the agency's overarching rule on commercial fishing in national parks *per se*, but rather the Park Service's *application and enforcement* of that rule against individual commercial herring fishermen . . . .").

[87] *See City & Cty. of S.F. v. U.S. Dep't of Transp.*, 796 F.3d 993, 1001–02 (9th Cir. 2015) (quoting *Heckler*, 470 U.S. at 832–33).

[88] Docket 42 at 9–10.

[89] *Heckler v*, 470 U.S. at 832 (emphasis omitted).

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 21 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 21 of 36

action generally involve "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise."[90]  This rationale also applies to § 404(c).[91]  That section "authorize[s]" EPA to take action "whenever" it determines that a discharge of dredged or fill material will result in an "unacceptable adverse effect."[92]  As several courts have recognized, and as will be discussed more fully below, this language grants EPA considerable discretion about when and whether to initiate § 404(c) proceedings.[93]  The Corps reviews a high number of § 404

---

[90] *Id*. at 831.

[91] The parties discuss at some length whether the decision to withdraw a proposed determination involves a complicated balancing of factors.  *See* Docket 36 at 41–45; Docket 38 at 49–54; Docket 42 at 16–23.  But they largely dispute whether the Withdrawal Decision at issue in this case articulated the factors that EPA considered, and the weight assigned to each.  *See, e.g.*, Docket 38 at 52–54 ("[I]t is unclear what exactly EPA is balancing [in the Withdrawal Decision].").  As Plaintiffs acknowledge, these arguments bleed into the merits of the case.  Docket 63 at 36:6–12 (Plaintiffs acknowledging that "when we get down into evaluating the rationality, the sufficiency, the merits of these explanations, that does start to feel more like a summary judgment, merits–type of issue, not a question of reviewability on the Court's part").  The Court has focused its inquiry on the statutory language and asks at a general level whether this category of decision involves complicated balancing.  *See Heckler*, 470 U.S. at 835 (focusing on statutory language); *City & Cty. of S.F.*, 796 F.3d at 1002 (same).

[92] 33 U.S.C. § 1344(c).

[93] *See, e.g.*, *Olmstead Falls v. U.S. Envtl. Prot. Agency*, 266 F. Supp. 2d 718, 722–23 (N.D. Ohio 2003) (holding that decision not to initiate § 404(c) was unreviewable under 5 U.S.C. § 701(a)(2) given the "obvious discretionary nature of [EPA's] veto power"); *Cascade Conservation League v. M.A. Segale, Inc.*, 921 F. Supp. 692, 698–99 (W.D. Wash. 1996) (holding that § 404(c) does not create a duty to act that is reviewable under either CWA citizen-suit provision or APA); *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 915 F. Supp. 378, 381 (N.D. Ga. 1995), *aff'd* 87 F.3d 1242 (11th Cir. 1996) (holding that "the explicit language of the CWA . . . mandate[s] [5 U.S.C. § 701(a)(2)'s] applicability to the EPA's oversight authority afforded by [CWA § 404(c)]."); *cf. Newport Galleria Grp. v. Deland*, 618 F. Supp. 1179, 1181–85 (D.D.C. 1985) (dismissing challenge to ongoing § 404(c) proceedings for lack of agency action but

---

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 22 of 36

permit applications;[94] in addition to EPA's initial determination regarding the environmental effects of a specific project, considerations about resource allocation and policy priorities would presumably affect the agency's decision whether to review a particular permit application under § 404(c).[95] These considerations are clearly within the agency's expertise.[96]

Using similar reasoning, the Ninth Circuit recently held that the Department of Transportation's ("DOT") decision not to take action analogous to a § 404(c) veto—the ability, under the Pipeline Safety Act, to "reject the certification" of a state's regulatory jurisdiction over intrastate gas pipelines—was "a decision not to enforce."[97] The Circuit explained that DOT "requires regulatory flexibility in deciding how to allocate enforcement resources" because the agency "receives

_____

noting that "Congress gave the EPA wide discretion to determine when to initiate proceedings under section 404(c)"). *But see All. to Save Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1, 8 (D.D.C. 2007) (reviewing decision not to initiate § 404 (c) proceedings because the "unacceptable adverse effect" clause "provides guidance, however minimal, to assist the court in determining whether the agency abused its . . . discretion").

[94] *See Coeur Alaska, Inc. v. Se. Alaska Conservation Council*, 557 U.S. 261, 303 n.5 (2009) (Ginsburg, J., dissenting) (noting that the Corps had received "more than 1 million" permit applications in 36 years).

[95] *But see All. to Save the Mattaponi*, 515 F. Supp. 2d at 8 (holding that decision not to initiate § 404(c) proceedings "does not involve to the same extent the difficult decisions regarding manpower and allocation of resources that inform enforcement decisions and give rise to the hesitancy to undertake judicial review").

[96] *See City & Cty. of S.F. v. U.S. Dep't of Transp.*, 796 F.3d 993, 1002 (9th Cir. 2015).

[97] *Id.* at 1002; *see also id.* at 1004 (describing DOT's decision as "a close analog to a decision not to enforce").

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 23 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 23 of 36

certifications from over fifty state authorities, and must choose where to expend its resources in challenging a certification."[98]  Relying on *Heckler*, the Circuit concluded that the agency had made "a decision not to enforce" that was "presumptively unreviewable under § 701(a)(2) of the APA."[99]  Plaintiffs attempt to distinguish this case by noting the many differences between the process by which DOT can reject a state certification under the Pipeline Safety Act and the CWA's § 404(c) veto.[100]  However, Plaintiffs overlook a stark similarity between the two statutory provisions: each contains language that "makes clear that the decision [not to act] is discretionary and therefore will involve balancing a number of considerations, including availability and allocation of agency resources, the predicted outcome of any hearing, and agency policies and priorities."[101]

---

[98] *Id.* at 1002.

[99] *Id.*

[100] Docket 38 at 35–36, 47 n.6.

[101] *City & Cty. of S.F.*, 796 F.3d at 1002.  The Pipeline Safety Act provides that DOT "may reject [a] certification," *id.* (alteration in original) (emphasis omitted) (quoting 49 U.S.C. § 60105(f)), while the CWA provides that EPA "is authorized" to prohibit a discharge of dredged or fill material.  33 U.S.C. § 1344(c); *cf Heckler v. Chaney*, 470 U.S. 821, 835 (1985) (concluding that statute under which "'[t]he Secretary is *authorized* to conduct examinations and investigations' . . . gives no indication of when an injunction should be sought" (alteration and emphasis in original) (quoting 21 U.S.C. § 332)).  Plaintiffs argue that such discretionary language was relevant in *San Francisco* only because the Ninth Circuit was reviewing the statute to determine whether it would overcome the presumption of unreviewability that attaches to decisions not to enforce.  Docket 38 at 47 n.6. However, the Circuit also relied on that discretionary language to determine that the presumption applied in the first place.  *City & Cty. of S.F.*, 796 F.3d at 1002.

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 24 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 24 of 36

Finally, at least one other court in this Circuit has applied *Heckler's* presumption of unreviewability to EPA inaction under § 404(c). In *Cascade Conservation League v. M.A. Segale, Inc.*, the district court dismissed several claims stemming from the Corps' determination that certain of the defendant's activities were "normal farming" and thus exempt from the CWA § 404's permitting requirements.[102] Relevant here, the plaintiff relied on § 404(c) to argue that EPA was required to review the Corps' normal-farming determination, and sought review of EPA's failure to do so under both the CWA and the APA.[103] Addressing the CWA claim first, the court held that EPA's inaction was not reviewable under that statute's citizen suit provision because the language of § 404(c) did not create "a nondiscretionary duty to review every determination made by the Corps."[104] The district court then dismissed the APA claim after a brief discussion, citing *Heckler* and finding that the "[p]laintiff cannot overcome the presumption against unreviewability of . . . EPA's inaction."[105] Although the *Cascade Conservation*

---

[102] 921 F. Supp. 692, 696, 699 (W.D. Wash. 1996); *see also* 33 U.S.C. § 1344(f)(1)(A).

[103] *Cascade Conservation League*, 921 F. Supp. at 698–99.

[104] *Id*. The CWA's citizen suit provision allows judicial review of an "alleged . . . failure of [EPA] to perform any act or duty under this Act which is not discretionary." 33 U.S.C. § 1365(a)(2).

[105] *Cascade Conservation League*, 921 F. Supp. at 699; *see also Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 915 F. Supp. 378, 381 (N.D. Ga. 1995), *aff'd* 87 F.3d 1242 (11th Cir. 1996) (dismissing CWA citizen suit challenge to EPA inaction under § 404(c) and finding that "the explicit language of the CWA . . . mandate[s] [5 U.S.C. § 701(a)(2)'s] applicability to the EPA's oversight authority

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 25 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 25 of 36

*League* court's discussion of *Heckler* was limited, its conclusion is persuasive and follows directly from Supreme Court precedent. Based on the foregoing and applying the reasoning of *Heckler*, the Court determines that agency inaction under § 404(c) is entitled to a presumption of unreviewability.

Plaintiffs also contend that the decision to withdraw a proposed determination is materially different from the decision not to initiate § 404(c) proceedings in the first place.[106] Their inference is that the former should not be presumed unreviewable even if the latter is.[107] However, the reasoning of *Heckler* applies equally to the decision to abandon an enforcement action as it does to the decision not to initiate one in the first place.[108] Further, while the Court has found no case specifically discussing the withdrawal of a proposed § 404(c)

---

afforded by [CWA § 404(c)].").

[106] Docket 38 at 34, 37.

[107] *See* Docket 33–34 ("[E]ven if the decision to regulate is discretionary, the agency is 'not free to terminate the rulemaking for no reason whatsoever.'" (quoting *Int'l Union, United Mine Workers of Am. v. U.S. Dep't of Labor*, 358 F.3d 40, 44 (D.C. Cir. 2004)))

[108] In addition to the reasons discussed above, the Supreme Court in *Heckler* reasoned that a presumption of unreviewability was appropriate because "an agency's refusal to institute proceedings shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict—a decision which has long been regarded as the special province of the Executive Branch." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). Prosecutors have nearly as much discretion to dismiss an indictment as they do not to indict at all. *See* Fed. R. Crim. P. 48(a) ("The government may, with leave of court, dismiss an indictment, information, or complaint."); *see also United States v. Hayden*, 860 F.2d 1483, 1487 (9th Cir. 1988) (holding that Rule 48(a) motions should be granted if made in good faith and noting that "Rule 48(a) was not enacted for the purpose of usurping the traditional role of the prosecutor to determine whether to terminate a pending prosecution").

---

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 26 of 36

determination,[109] the Seventh Circuit recently held that a similar action was unreviewable under § 701(a)(2) of the APA.[110] The plaintiff in that case challenged EPA's withdrawal of its CWA § 404(j) objection to a proposed dredge-and-fill permit prepared by the State of Michigan after the agency concluded that a revised draft submitted by the state had resolved its concerns.[111] The Seventh Circuit characterized the § 404(j) objection as an enforcement action, relying heavily on *Heckler* to conclude that "in the absence of any regulation addressing the basis for

---

[109] This is likely because withdrawal of proposed § 404(c) determination is an exceedingly rare event. *See* Docket 38 at 22 ("Plaintiffs' research has found only one other published Federal Register notice withdrawing a proposed determination." (citing 56 Fed. Reg. 58,247 (Nov. 18, 1991)); *cf. Coeur Alaska, Inc. v. Se. Alaska Conserv. Council*, 557 U.S. 261, 303 n.5 (2009) (Ginsburg, J., dissenting) (noting that EPA has "exercised [its § 404(c) veto power] only a dozen times over 36 years").

[110] *Menominee Indian Tribe of Wis. v. U.S. Envtl. Prot. Agency*, 947 F.3d 1065, 1072–73 (7th Cir. 2020). The Seventh Circuit did not explicitly engage in a two-step analysis and separately hold that the withdrawal of the § 404(j) objection was entitled to the presumption of unreviewability as a decision not to take enforcement action; however, the structure of the opinion and its heavy reliance of the portions of *Heckler* that establish that presumption indicate that the Circuit treated EPA's action as such. *See, e.g.*, *id.* at 1072 ("Discretionary enforcement decisions reflect one category of agency decisions that the Supreme Court has identified as unsuitable for judicial review.").

[111] *Id.* at 1069. When a state has assumed permitting authority from the Corps under § 404(h), EPA retains the authority to review and object to state-issued permits. 33 U.S.C. § 1344(j). If EPA objects to a state permit under § 404(j), the state must revise the permit and resubmit it to EPA for review. *Id.* Plaintiffs maintain that *Menominee* is distinguishable because § 404(c) does not implicate a "cooperative federalism scheme" like § 404(j), and that therefore it does not involve a complicated balancing of factors. Docket at 50 at 5–6 (Response to Notice of Recent, Related Authority). But the Court looks to *Menominee* not to determine whether § 404(c) confers an enforcement power on EPA, the question Plaintiffs' argument addresses, but to determine whether the abandonment of an enforcement action should be accorded the same presumption of unreviewability as the initial decision not to act.

---

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 27 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 27 of 36

the decision to withdraw an objection, the choice is as committed to the agency's discretion as the decision to object in the first instance."[112]  The Court agrees with the Seventh Circuit's reasoning, and finds that the Withdrawal Decision is presumptively unreviewable.

This presumption is not, however, absolute.  It "may be rebutted"  if § 404(c) or its implementing regulations "provide[s] guidelines for the agency to follow in exercising its enforcement powers."[113]  The Supreme Court explained in *Heckler* that "Congress may limit an agency's exercise of enforcement power if it wishes, either by setting substantive priorities, or by otherwise circumscribing an agency's power to discriminate among issues or cases it will pursue."[114]  Plaintiffs argue that the Clean Water Act provides such a limit by "set[ting] forth a factor that EPA must consider": the potential of a discharge of dredged or fill material to produce an "unacceptable adverse effect."[115]  Plaintiffs maintain that this factor and the express purpose of the CWA—"to restore and maintain the chemical, physical, and

---

[112] *Menominee Indian Tribe of Wis.*, 947 F.3d at 1073.

[113] *Heckler*, 470 U.S. at 832–33; *see also Greater L.A. Council of Deafness, Inc. v. Baldridge*, 827 F.2d 1353, 1361 (9th Cir. 1987) ("[T]he Supreme Court's holding in [*Heckler*] does not bar judicial review when an agency's regulations provide the Court with law to apply.").

[114] *Heckler*, 470 U.S. at 833.

[115] Docket 38 at 39–41 (citing 33 U.S.C. § 404(c) and its implementing regulations).

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 28 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 28 of 36

biological integrity of the Nation's waters"[116]—provide the Court with standards sufficient to establish review of the Withdrawal Decision.[117]  EPA maintains that neither the statute nor the regulations substantively limit EPA's power to withdraw a proposed § 404(c) determination.[118]

Beginning with the statute, § 404(c) does not mention either proposed determinations or their withdrawal.  It instead "authorize[s]" EPA to veto a dredge-and-fill permit "whenever [it] determines" that the discharge "will have an unacceptable adverse effect."[119]  As noted above, several courts have recognized that this language grants EPA a considerable degree of discretion regarding when to pursue a § 404(c) veto.[120]  For example, the district court for the Northern District of Georgia explained that § 404(c)'s "use of the term 'authorize' (as opposed to 'shall') suggests a discretionary function."[121]  That court ultimately concluded that "[a]lthough [5 U.S.C. § 701(a)(2)] is, admittedly, to be construed narrowly, the

---

[116] 33 U.S.C. § 1251(a).

[117] Docket 38 at 38–44.

[118] Docket 36 at 36–41; Docket 42 at 11–16.

[119] 33 U.S.C. § 1344(c).

[120] *See supra* note 94 and accompanying text.

[121] *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 915 F. Supp. 378, 381 (N.D. Ga. 1995), *aff'd* 87 F.3d 1242 (11th Cir. 1996).  The court was interpreting § 404(c) to determine whether it created a nondiscretionary duty such that review was appropriate under 33 U.S.C. § 1365(a)(2).  *Id.*  However, the court relied on *Heckler* in its analysis and later explained that "the APA judicial review mechanism does not affect the finding set forth immediately above."  *Id.*

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 29 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 29 of 36

explicit language of the CWA . . . mandate[s] its applicability to the EPA's oversight authority afforded by [§ 404(c)]."[122]   Indeed, the Supreme Court in *Heckler* considered language similar to § 404(c)'s provision that the Administrator is "authorized" to act.   The Supreme Court contrasted an enforcement provision under which the Secretary of Health and Human Services  "is *authorized* to conduct examinations and investigations,"[123] with one providing that the Secretary of Labor "shall investigate . . . [a] complaint and, if he finds probable cause to believe that a violation . . . has occurred . . . he shall . . . bring a civil action."[124] The Supreme Court held that the former was unreviewable under 5 U.S.C. § 701(a)(2), but explained that the latter "was not '"beyond the judicial capacity to supervise"'" because it "indicated that the Secretary was required to file suit if certain 'clearly defined' factors were present."[125]

While § 404(c) identifies a factor that is necessary for the issuance of a veto— an unacceptable adverse effect—it does not require the agency to act whenever that factor is present.[126]  Nor does it require EPA to determine that the factor is *not*

---

[122] *Id.*

[123] *Heckler*, 470 U.S. at 835 (emphasis in original) (quoting 21 U.S.C. § 372).

[124] *Id.* at 833 (second, third, and fourth alterations in original) (quoting 29 U.S.C. § 482).

[125] *Id.* at 834 (quoting *Bachowski v. Brennan*, 502 F.2d 79, 87–88 (3d Cir. 1974)).

[126] The Court notes, however, that judicial review is available when EPA makes a final determination and affirmatively finds that an unacceptable adverse effect will result from the discharge of dredged or fill material in a specific watershed.  *See Bersani v. U.S. Envtl. Prot. Agency*, 674 F. Supp. 405, 419–20 (N.D.N.Y 1987), *aff'd* 850 F.2d 36 (2d Cir. 1988),

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 30 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 30 of 36

present before terminating proceedings once they have been initiated. Section 404(c) therefore lacks the type of mandatory language that "supplie[s] sufficient standards to rebut the presumption of unreviewability" for decisions not to enforce.[127]

The regulations implementing § 404(c) provide no further guidance than the statute itself. 40 C.F.R. § 231.5 provides that "[t]he Regional Administrator . . . shall," after public notice and comment, "either withdraw the proposed determination or prepare a recommended determination . . . because the discharge of dredged or fill material at [the] site would be likely to have an unacceptable adverse effect."[128] While the regulation requires the Regional Administrator to take one of two procedural steps, it provides a standard to govern only one of the available options. The Regional Administrator may only prepare a recommended determination when he finds that an unacceptable adverse effect would be likely. No such standard is associated with the decision to withdraw a proposed determination.

_____

cert. denied 489 U.S. 1089 (1989) (reviewing issuance of § 404(c) veto under APA).

[127] *Heckler*, 470 U.S. at 833. Plaintiffs maintain that a "focus on the absence of mandatory language in Section 404(c) is a red herring" because "[j]udicial review is precluded only when a statute provides *no criteria* whatsoever to evaluate an agency's action." Docket 38 at 38. However, Plaintiffs' argument assumes that *Heckler's* presumption of unreviewability does not apply to § 404(c). *See* Docket 38 at 31–38.

[128] 40 C.F.R. § 231.5(a).

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 31 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 31 of 36

From this, one might infer that withdrawal is only appropriate when EPA concludes that an unacceptable adverse effect would be *un*likely. Indeed, Plaintiffs look to the structure of the § 404(c) regulations, maintaining that their singular focus is whether such an effect will occur.[129] The Court reads the regulations differently. They allow EPA to advance through the § 404(c) process as it makes increasingly specific judgments regarding the potential for an unacceptable adverse effect to occur.[130] But the regulations also show that the agency can explicitly constrain its discretion to terminate the process when it seeks to do so; 40 C.F.R. § 231.3(a)(2) affirmatively prohibits EPA from abandoning the § 404(c) process before preparing a proposed determination unless the Corps "has . . . demonstrated to the satisfaction of the Regional Administrator that no unacceptable adverse effect(s) will occur."[131] The fact that 40 C.F.R. § 231.5(a)

_____

[129] Docket 38 at 40–41 (citing 40 C.F.R. §§ 231.3(a), 231.4(a), 231.5(a) 230.10(c)).

[130] *See, e.g.*, 40 C.F.R. § 231.3(a) (providing that the Regional Administrator "*may* initiate" the § 404(c) process if he "has reason to believe . . . that an 'unacceptable adverse effect' *could* result" from the discharge of dredged or fill material into a certain area (emphasis added)).

[131] 40 C.F.R. § 231.3(a)(2). The regulation provides, in relevant part:

> If within 15 days of the receipt of the Regional Administrator's notice [of his intent to prepare a proposed determination] under paragraph (a)(1) of this section, it has not been demonstrated to the satisfaction of the Regional Administrator that no unacceptable adverse effect(s) will occur or the District Engineer or state does not notify the Regional Administrator of his intent to take corrective action to prevent an unacceptable adverse effect satisfactory to the Regional Administrator, the Regional Administrator *shall* publish notice of a proposed determination in accordance with the procedures of this section.

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 32 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 32 of 36

provides no such requirement before a proposed determination may be withdrawn is telling.[132]

Moreover, 40 C.F.R. § 231.5 does not require the Regional Administrator to publicly explain his decision to withdraw a proposed determination.[133]  Instead, the regulation only requires the Regional Administrator to notify the EPA Administrator of his decision.[134]  If the EPA Administrator declines to review the decision to withdraw, the Regional Administrator must then simply give notice of the withdrawal, which "constitute[s] final agency action."[135]  This is a stark contrast to the issuance of a final determination, wherein the EPA Administrator must "make

---

*Id.* (emphasis added).

[132] *Cf. City and Cty. of S.F. v. U.S. Dep't of Transp.*, 796 F.3d 993, 1002 (9th Cir. 2015) ("While the use of the word 'shall' elsewhere in the Pipeline Safety Act clearly indicates that Congress had no trouble imposing duties on the Secretary, the relevant sections to certification are peppered with the classic language of discretion.").

[133] Plaintiffs assert that "the general requirements of reasoned agency decisionmaking" provide the Court with law to apply to the Withdrawal Decision.  Docket 38 at 42–43 (quoting *Dep't of Comm. v. New York*, __ U.S. __, 139 S. Ct. 2551, 2568–69 (2019)).  Plaintiffs rely on *Department of Commerce v. New York*, where the Supreme Court explained that "[t]he reasoned explanation requirement of administrative law, after all, is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public."  139 S. Ct. at 2575–76.  But these considerations cannot apply where the agency is not required to provide an explanation in the first place.  Indeed, *Department of Commerce* concerned a decision about the census that the Secretary of Commerce was required to explain and that the Supreme Court held was not entitled to a presumption of unreviewability under 5 U.S.C. § 701(a)(2).  *Id.* at 2568–69, 2572 (citing 13 U.S.C. § 141(f), which the Court explained "requires the Secretary to report to Congress about his plans for the census").

[134] 40 C.F.R. § 231.5(c).

[135] 40 C.F.R. § 231.5(c)(1).

---

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 33 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 33 of 36

findings . . . and state the reasons for the final determination."[136]  The fact that the regulation does not mandate a public explanation is further indication that the decision to withdraw a proposed determination is committed to EPA's discretion.[137] The implementing regulations impose procedural requirements on the agency before a proposed determination may be withdrawn, but none that provide the Court with law to apply to the claims alleged in Plaintiffs' complaints.[138]

Apart from the statutory language, Plaintiffs rely primarily on *Alliance to Save the Mattaponi v. U.S. Army Corps of Engineers* to support their argument that § 404(c) is subject to judicial review.[139]  In that case, the district court for the District of Columbia reviewed the plaintiffs' claim that EPA's failure to initiate § 404(c) proceedings was arbitrary and capricious under the APA.[140]  The district court found that the "unacceptable adverse effect" language of § 404(c) "provides guidance, however minimal, to assist the court in determining whether the agency

---

[136] 40 C.F.R. § 231.6; *see also* 33 U.S.C. § 1344(c) (requiring the Administrator to "set forth in writing and make public his findings and his reasons for making any determination under this subsection.").

[137] *Cf. Massachusetts v. U.S. Envtl. Prot. Agency*, 549 U.S. 497, 527 (2007) (noting that unlike "decision[s] not to initiate an enforcement action," denials of petitions for rulemaking are "subject to special formalities, including a public explanation" (quoting *Am. Horse Prot. Ass'n, Inc. v. Lyng*, 812 F.2d 1, 3–4 (D.C. Cir. 1987))).

[138] Plaintiffs do not claim that the Regional Administrator failed to comply with a procedural requirement, such as not notifying the EPA Administrator of his decision.

[139] *See, e.g.*, Docket 38 at 40, 45 (citing 515 F. Supp. 2d 1 (D.D.C. 2007)).

[140] *All. to Save the Mattaponi*, 515 F. Supp. 2d at 8.

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 34 of 36

Case 3:19-cv-00265-SLG   Document 75   Filed 04/17/20   Page 34 of 36

abused its . . . discretion."[141]  The district court further found that EPA's inaction should not be accorded a presumption of unreviewability because it was "very different from a decision not to enforce or prosecute: it is essentially a decision (i.e., an action) to indirectly approve a permit."[142]

The Court does not find *Mattaponi*'s reasoning persuasive.  It stands alone among the decisions from other jurisdictions that have determined that the agency's failure to initiate § 404(c) proceedings is unreviewable under the APA.[143] More importantly, as discussed above, the Court has determined that the decision to withdraw a proposed determination is analogous to a decision not to enforce, such that it is presumptively unreviewable.  In reaching its contrary decision, the court in *Alliance to Save the Mattaponi* reasoned that "the D.C. Circuit repeatedly has read [*Heckler*] narrowly in cases involving agency inaction."[144]  The Court is aware of no such line of cases in the Ninth Circuit.

The Court has not found any provision in either § 404(c) or its implementing regulations to rebut the Withdrawal Decision's presumption of unreviewability. Plaintiffs protest that "EPA cannot ring the alarm that the proposed Pebble Mine

---

[141] *Id.*

[142] *Id.*

[143] *See supra* note 94.

[144] 515 F. Supp. 2d at 9 (citing *Sierra Club v. Thomas*, 828 F.2d 783 (D.C. Cir. 1987) and *Her Majesty the Queen in Right of Ontario v. U.S. Envtl. Prot. Agency*, 912 F.2d 1525, 1531 (D.C. Cir. 1990)).

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 35 of 36

could have unacceptable adverse effects . . . , but then suddenly abandon its concerns without any rational explanation."[145]  However, the Court interprets the text of the Clean Water Act to commit that decision to the agency's discretion.  The Administrative Procedure Act forecloses review of Plaintiffs' substantive challenges to the Withdrawal Decision.[146]  Plaintiffs have therefore failed to state a claim upon which relief can be granted, and the Court must grant EPA's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

In light of the foregoing, Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b) at Docket 36 is GRANTED.[147]

The Clerk of Court is directed to enter a Final Judgment in these consolidated actions accordingly.

DATED this 17th day of April, 2020 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[145] Docket 38 at 53–54.

[146] *See* 5 U.S.C. § 701(a)(2).

[147] Plaintiffs' Motion for Summary Judgment at 48 is therefore DENIED as moot.

Case No. 3:19-cv-00265-SLG (consol.), *Bristol Bay Econ. Dev. Corp., et al. v. Hladick, et al.*
Order re Motion to Dismiss
Page 36 of 36