Thomas Amodio, Bar No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone: (907) 222-7100
Facsimile: (907) 222-7199
tom@reevesamodio.com

*Of Counsel:*

Patricia B. Palacios (*pro hac vice pending*)
Cynthia L. Taub (*pro hac vice pending*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
ppalacios@steptoe.com
ctaub@steptoe.com

*Attorneys for Intervenor Pebble Limited Partnership*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BRISTOL BAY ECONOMIC DEVELOPMENT CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CHRIS HLADICK; U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>Defendants,<br><br>STATE OF ALASKA,<br><br>Defendant-intervenor. | Case No. 3:19-cv-00265-SLG |

| | |
|---|---|
| SALMON STATE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 3:19-cv-00267-SLG |
| v. | ) |
| | ) |
| CHRIS HLADICK; U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*, | ) ) ) ) |
| | ) |
| Defendants, | |
| TROUT UNLIMITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:19-cv-00268-SLG |
| v. | ) |
| | ) |
| CHRIS HLADICK; U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*, | ) ) ) ) |
| Defendants. | |

**PEBBLE LIMITED PARTNERSHIP'S MOTION TO INTERVENE
AND MEMORANDUM OF LAW IN SUPPORT**

# INTRODUCTION

Pursuant to Fed. R. Civ. P. 24, the Pebble Limited Partnership ("PLP") hereby moves to intervene in this action as a defendant as a matter of right, or alternatively, for permissive intervention. PLP has a clear, significant, and protectable interest at stake in this case.

PLP holds valuable mineral rights to, and is proposing to develop, a portion of the Pebble copper--gold--molybdenum porphyry deposit ("Pebble Deposit") in southwest Alaska. In 2014, the U.S. Environmental Protection Agency ("EPA") proposed to severely restrict the use of certain waters for disposal of dredged or fill material associated with mining the Pebble Deposit ("the Proposed Determination"). If the Proposed Determination were finalized, EPA could prohibit the disposal of dredged or fill material into designated areas—a result that would directly impact PLP's ability to pursue any development at the Pebble Deposit. In August 2019, EPA withdrew its Proposed Determination ("Withdrawal Decision"). These lawsuits followed, seeking to invalidate the Withdrawal Decision. PLP's proposed project, and its legally protectable property interests in the Pebble Deposit, would be directly impacted if EPA's Withdrawal Decision were invalidated or remanded. As the holder of mineral rights and the applicant for permits to develop the Pebble Deposit, PLP has a significant interest in the outcome of this litigation and is entitled to intervene for both merits and remedies purposes.

# FACTS

The Clean Water Act ("CWA") gives the U.S. Army Corps of Engineers ("the Corps") authority to issue permits for the discharge of dredged or fill material into navigable waters of the United States. 33 U.S.C. § 1344(a). Section 404(c) of the CWA provides EPA authority to deny or restrict those discharges under certain limited circumstances. *Id.* § 1344(c).

In 2014, EPA issued a Proposed Determination under Section 404(c) of the CWA that, if finalized, would have precluded the Corps from issuing a permit to allow development of the Pebble Deposit. In August 2019, EPA withdrew its Proposed Determination. These lawsuits followed.

In 2019, Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b), which this Court granted on April 17, 2020. The Court found that the Administrative Procedure Act ("APA") foreclosed review of Plaintiffs' challenges to the Withdrawal Decision, and that Plaintiffs therefore failed to state a claim upon which relief could be granted.

On June 17, 2021, the Ninth Circuit reversed in part and remanded the case to this Court for further proceedings. *Trout Unlimited v. Michelle Pirzadeh*, Case No. 20-35504 (9th Cir. June 17, 2021). The Ninth Circuit held that while the CWA contained no meaningful legal standard, EPA's regulations did. Specifically, to the extent that Plaintiffs' complaints challenged EPA's action pursuant to the CWA, without reference to the agency's implementing regulations, the panel held that such action was not subject to judicial review. Accordingly, the panel affirmed this Court's dismissal of Plaintiffs' complaints insofar as the complaints rested directly on the CWA. The panel held, however, that 40 C.F.R. § 231.5(a) allowed EPA to withdraw a proposed determination only when an "unacceptable adverse effect" on specified resources was not "likely." Accordingly, the Withdrawal Decision was subject to judicial review under the APA. Thus, the panel remanded for further proceedings to determine whether EPA's Withdrawal Decision was arbitrary, capricious, an abuse of discretion, or contrary to law pursuant to 5 U.S.C. § 706(2)(A).

# ARGUMENT

PLP hereby moves to intervene as of right under Federal Rule of Civil Procedure 24(a) or, alternatively, for permissive intervention under Rule 24(b).[1]

## A. PLP is Entitled to Intervene in this Action as a Matter of Right

Pursuant to Fed. R. Civ. P. 24(a)(2), a court must, upon timely motion, permit intervention as a matter of right by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest . . . ." Courts construe the rule liberally and in favor of potential intervenors. *United States v. Oregon*, 839 F.2d 635, 637 (9th Cir. 1988) ("We construe the rule broadly in favor of applicants for intervention."). The court's evaluation is guided primarily by "practical and equitable considerations," and a court must accept as true the non-conclusory allegations made in support of an intervention motion. *Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (citation omitted).

The Ninth Circuit has adopted a four-part test for intervention as of right: (1) the motion must be timely; (2) the applicant must claim a "significantly protectable interest" relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the parties to the action. *See, e.g.*, *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us*, 62 F.3d

---

[1] PLP is not required to satisfy the requirements for Article III standing to intervene on behalf of the Defendants. *See Vivid Entm't, LLC v. Fielding,* 774 F. 3d 566, 573 (9th Cir. 2014) (intervenor that is not initiating action "need not meet Article III standing requirements"). Nonetheless, PLP has Article III standing here because it is directly impacted by the EPA action at issue, as well as Plaintiffs' requested relief.

*Bristol Bay Economic Dev. Corp. v. Hladick,* 3:19-cv-00265-SLG (consolidated)     Page 3 of 11
PLP'S MOT. TO INTERVENE

1217, 1219 (9th Cir. 1995); *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011). PLP meets all four factors.

> 1. **PLP's Motion is Timely**

The timeliness of this motion is evaluated based on three factors: (1) the stage of the proceedings at which intervention is sought; (2) the prejudice that would be suffered by other parties if intervention were granted; and (3) the reason for and length of the delay in seeking intervention. *Empire Blue Cross & Blue Shield*, 62 F.3d 1217 at 1219.

Prejudice to existing parties is the most important timeliness consideration. *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). Here, there is no prejudice to the existing parties because the merits have not yet been fully briefed or addressed. While Plaintiffs filed a motion for summary judgment in 2020, and the Government filed a response, the Court granted the Defendants' Motion to Dismiss before the merits were fully briefed. Therefore, if PLP were granted intervention, it would be able to submit briefing on the merits without delaying the resolution of this case.

In similar cases where intervention was sought before the resolution of merits issues, courts have liberally granted intervention. For example, in *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011), the Ninth Circuit found there would be no prejudice where the motion to intervene was brought after an answer was filed but before any issues were adjudicated on the merits. *Id.* at 897. Similarly, in *Chilkat Indian Vill. of Klukwan v. Bureau of Land Management*, No. 3:17-CV-00253-TMB, 2018 WL 9854668, at *3 (D. Alaska May 24, 2018), the court found no prejudice when a party sought to intervene prior to a decision on the merits. Because PLP promptly filed this motion after the Ninth Circuit remanded the case,

and because the merits have not yet been fully briefed, there is no prejudice to the existing parties and the motion is timely.

PLP's motion is also timely because there was a sound reason for the delay in filing. PLP did not participate in the initial phase of this case because the Federal Defendants were pursuing a motion to dismiss on justiciability grounds. PLP's factual knowledge as the project proponent was not relevant to the question of the reviewability of EPA's action under the APA. In addition, the only outcome at issue in the motion to dismiss stage was whether the case would be dismissed or not. Now that the case is potentially proceeding to the merits however, the relief sought by the Plaintiffs is at issue, including the potential invalidation of the Withdrawal Decision. As discussed more fully below, such relief could significantly impact PLP's interests. PLP therefore seeks to intervene now to ensure its interests are protected, and to bring its factual and procedural knowledge to bear on the merits of the case.

In addition, there has been a change in Administration since in the original proceedings in this Court, and it is yet to be seen whether the Federal Defendants will continue to advocate the same positions in this case. This change in circumstances also supports the timeliness of this motion.

A change in the posture of the case can be grounds for timely intervention, even if these changed circumstances come long after the original complaint is filed. For example, in *Smith v. Los Angeles Unified School District*, the Ninth Circuit found that a third party seeking to intervene shortly after a "change in circumstances" that affected the party's interest in the case was timely despite the fact that the intervention came *twenty years* after the suit was filed. 830 F.3d 843, 856 (9th Cir. 2016). The US Supreme Court reached a similar result in *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977), finding that an intervention motion was timely despite being brought long after the complaint was originally filed because "as soon as it became

*Bristol Bay Economic Dev. Corp. v. Hladick,* 3:19-cv-00265-SLG (consolidated)    Page 5 of 11
PLP'S MOT. TO INTERVENE

clear to the respondent that the[ir] interests [] would no longer be protected . . . she promptly moved to intervene to protect those interests." PLP's motion is therefore timely because it was filed shortly after the change in posture brought by the Ninth Circuit's remand, and before the merits of the case have been fully briefed or argued.

### 2. PLP Has a Legally Protectable Interest in the Challenged Decision

"A putative intervenor will generally demonstrate a sufficient interest for intervention. . . if 'it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y*, 630 F.3d at 1180 (citations omitted). The "interest" test is "primarily a practical guide to disposing of lawsuits by involving as many concerned persons as is compatible with efficiency and due process." *Id.* at 1179. The inquiry includes whether "there is a relationship between the legally protected interest and the claims at issue." *Id.* at 1176 (citation and internal quotation marks omitted)). An intervening party's interest in the remedy sought can also establish a protectable interest. *United States v. City of Los Angeles*, 288 F.3d 391, 399-400 (9th Cir. 2002).

PLP has a clear protectable interest in this case because it holds valuable mineral rights to a portion of the Pebble Deposit. Plaintiffs' claims center around EPA's 2014 Proposed Determination, which proposed to severely restrict the use of certain waters for disposal of dredged or fill material associated with mining the Pebble Deposit. Dkt. 1 (BBEDC Compl. ¶ 3). If the Proposed Determination were finalized, EPA could prohibit the disposal of dredged or fill material into designated areas—a result that would directly impact PLP's ability to pursue any development at the Pebble Deposit. PLP's proposed project, and its legally protectable property interests in the Pebble Deposit, would be directly impacted if EPA's withdrawal decision were invalidated or remanded. As the holder of mineral rights and the applicant for permits to develop

the Pebble Deposit, PLP has a significant interest in the outcome of this litigation and is entitled to intervene as of right.

PLP also demonstrated their direct and substantial interest in this matter by participating in the 404(c) administrative process that culminated in the withdrawal action. *See, e.g.*, Public Comments on proposed Determination to Restrict the Use of an Area as a Disposal Site; Pebble Deposit Area, https://www.regulations.gov/docket/EPA-R10-OW-2014-0505 (last visited Aug. 22, 2021). When an entity seeking intervention has participated "in the administrative process leading to the governmental action," the entity has demonstrated a direct and substantial interest in the litigation. *Michigan State AFL-CIO* v. *Miller,* 103 F.3d 1240, 1245-46 (6th Cir. 1997).

### 3. PLP's Interests May be Impaired by the Disposition of the Litigation

To satisfy the third element of the test, a movant must demonstrate that the disposition of the case "may as a practical matter" impair its ability to protect its interest. *Wilderness Soc'y*, 630 F.3d at 1177. If the movant "would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 Advisory Comm. Notes). "Generally, after determining that the applicant has a protectable interest, courts have 'little difficulty concluding' that the disposition of the case may affect such interest." *Jackson v. Abercrombie,* 282 F.R.D. 507, 517 (D. Haw. 2012) (citing *Cal. ex rel. Lockyer v. United States,* 450 F.3d 436, 442 (9th Cir. 2006)).

The question of impairment is closely related to the question of existence of an interest. As described above, Plaintiffs' requested relief could have far-reaching impacts on PLP's ability to pursue development of its mineral rights. Plaintiffs' requested relief includes invalidating the EPA withdrawal decision, *see, e.g.,* Dkt. 1, Trout Unlimited Compl, at pp. 51-52, which would reopen the 404(c) process and adversely impact PLP's ability to pursue development of the

*Bristol Bay Economic Dev. Corp. v. Hladick,* 3:19-cv-00265-SLG (consolidated)   Page 7 of 11
PLP'S MOT. TO INTERVENE

Case 3:19-cv-00265-SLG   Document 89   Filed 08/26/21   Page 9 of 14

Pebble Deposit. Thus, PLP's proposed project, and its legally protectable property interests in the Pebble Deposit, would be directly impacted if EPA's withdrawal decision were invalidated or remanded. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (disposition of lawsuit would impair intervenor's ability to protect its interests regardless of whether intervenor could reverse unfavorable ruling by bringing a separate lawsuit; noting that "[t]here is no question that the task of reestablishing the status quo if [plaintiffs] succeed[] in this case will be difficult and burdensome").

### 4. PLP's Interests Are Not Adequately Protected by the Defendants

Rule 24(a)'s final requirement is that the proposed intervenor's interest not be adequately represented by existing parties. The burden to show inadequacy is minimal. *Sw. Ctr. For Biological Diversity,* 268 F.3d at 823. The possibility that the interests of PLP and EPA may diverge "need not be great" to satisfy the minimal burden of showing that representation "may" be inadequate. *Utahns For Better Transp. v. United States*, 295 F.3d. 1111, 1117 (10th Cir. 2002). That standard is easily met here.

In assessing the adequacy of representation, courts consider: (1) whether the present parties' interests are such that they will undoubtedly make all the intervenor's arguments; (2) whether the present parties are capable of and willing to make those arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Sw. Ctr. For Biological Diversity*, 268 F.3d at 822. "[I]ntervention of right does not require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests," only that there *may be* a divergence of interests. *Citizens for Balanced Use*, 647 F.3d at 900. "Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." 3B Moore's Federal Practice, ¶ 24.07[4] at 24–78 (2d ed. 1995)

*Bristol Bay Economic Dev. Corp. v. Hladick,* 3:19-cv-00265-SLG (consolidated)     Page 8 of 11
PLP'S MOT. TO INTERVENE

PLP has separate and distinct interests from EPA, including direct economic interests. While EPA has an interest in defending the challenged decision in the normal course, PLP has a financial stake in the outcome of the suit. Thus, while EPA may be focused on issues of administrative convenience and flexibility, PLP is focused on the potentially deleterious consequences that the Proposed Determination could have on PLP's interests. PLP's interests are thus distinct from EPA's more general mandate, and these differences are sufficient to justify intervention. *See, e.g.*, *Fund for Animals*, 322 F.3d 736 ("[W]e have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors."); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973-74 (3d Cir. 1998) (federal agency and private businesses seeking to intervene had "interests inextricably intertwined with, but distinct from" each other and thus agency could not adequately represent private interests); *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) (industry intervention allowed because "[t]he government must represent the broad public interest, not just the [concerns of the industry group]"). *See also Sw. Ctr. For Biological Diversity*, 268 F.3d at 823 ("a federal agency" as regulator "cannot be expected under the circumstances presented to protect these private interests").

In addition, EPA may have an interest in protecting the extent of its authority in the 404(c) process that may conflict with PLP's interests. In fact, PLP and EPA have been opposed in past litigation regarding EPA's authority under Section 404(c). *See Pebble Ltd. P'ship v. EPA*, No. 3:14-CV-0097-HRH (D. Alaska Sept. 24, 2016).

PLP's participation in the case is therefore necessary to fully protect its interests and it should be allowed to intervene as of right.

## B. In the Alternative, PLP Should be Granted Permissive Intervention

Alternatively, PLP requests permissive intervention under Fed. R. Civ. P. 24(b)(2). Under Rule 24(b)(2), which governs permissive intervention, a district court may permit a movant to

intervene where the motion is timely, the movant has a claim or defense which shares a common question of law or fact with the main action, and the proposed intervention will not unduly delay or prejudice the adjudication of the original parties' rights in the litigation. Fed. R. Civ. P. 24(b)(1)(B) & (b)(3). This Court has broad discretion to allow permissive intervention. *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

PLP's motion is timely for the reasons presented above. The commonality requirement is satisfied because PLP seeks to defend the withdrawal of EPA's Proposed Determination—which is the central issue raised in Plaintiffs' consolidated complaints. Clearly, PLP's interests share common questions of law and fact with the questions being litigated in this case.

PLP's participation in this case will "significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented" because of its central role as the applicant for the proposed mine that would be developed. *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

In PLP's case, as discussed above, the motion to intervene is unquestionably timely, and it is anticipated that PLP and the Defendants will assert common defenses to the claims asserted. Moreover, as described above, PLP's intervention would not unduly delay or prejudice the adjudication of the original parties' rights since the case was just recently remanded by the Ninth Circuit and the merits are not yet fully briefed.

Therefore, if PLP is not allowed to intervene in this proceeding as a matter of right, it should alternatively be granted permissive intervention under Rule 24(b).

## CONCLUSION

For the reasons set forth above, this Court should grant PLP's Motion to Intervene as of right under Fed. R. Civ. P. 24(a), or alternatively, permit PLP to intervene under Fed. R. Civ. P. 24(b)(2).

RESPECTFULLY SUBMITTED this 26th day of August, 2021.

/s/ Thomas Amodio
Thomas Amodio, Bar No. 8511142
REEVES AMODIO LLC
500 L Street, Suite 300
Anchorage, AK 99501
Telephone: (907) 222-7100
Facsimile: (907) 222-7190
tom@reevesamodio.com

*Of Counsel:*

Patricia B. Palacios (*pro hac vice pending*)
Cynthia L. Taub (*pro hac vice pending*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Telephone: (202) 429-3000
Facsimile: (202) 429-3902
ppalacios@steptoe.com
ctaub@steptoe.com

*Attorneys for Intervenor Pebble Limited Partnership*

**CERTIFICATE OF SERVICE**

I certify that on this 26th day of August, 2021, I electronically filed a copy of **PEBBLE LIMITED PARTNERSHIP'S MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT** using the CM/ECF system, which will electronically serve all counsel of record.

/s/ Thomas Amodio
Thomas Amodio